**George Thomas COX, Appellant,**

v.

**SOUTHERN GARRETT, L.L.C., Southern Chemical Corp., Excelerate Trading, L.L.C., Roger Moyers, Stephen Korkmas, Wildebrand H. Spin, Fred Wood, Jan T. Spin, and ABC Chemical Corp., Appellees.**

No. 01–05–01091–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 11, 2007.

Jeffrey Lee Dorrell, Law Offices of Jeffrey L. Dorrell, P.C., Houston, TX, for Appellant.

Jeffrey W. Chambers, Ware Snow Fogel & Jackson LLP, Timothy F. Lee, Eileen O'Neill, Thomas C. Fitzhugh IV, Ware, Jackson, Lee & Chambers, L.L.P., Mari Rose Lee Gianukos, Houston, TX, for Appellees.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, George Thomas Cox, appeals a take-nothing final judgment that the trial court granted in favor of appellees, Southern Garrett, L.L.C., Southern Chemical Corp., Excelerate Trading, L.L.C., Roger Moyers, Stephen Korkmas, Wildebrand H. Spin, Fred Wood, Jan T. Spin, and ABC Chemical Corp. In three issues on appeal, Cox argues that the trial court erred by (1) refusing to enforce Southern Garrett's membership regulations; (2) granting directed verdict on Cox's claim for breach of fiduciary duty; and (3) granting directed verdict on Cox's claim for piercing the corporate veil of Excelerate and ABC Chemical.

We affirm.

## Background

This dispute turns on the construction of an agreement regarding termination of membership in a limited liability company. In 2002, Roger Moyers and Mark Brueggeman approached Cox about purchasing a methanol distribution business from Lyondell. At the time, Cox was the president of Garrett Oil. Moyers, Brueggeman, and Cox eventually formed Garrett Petrochemicals[1] to acquire the methanol distribution business from Lyondell.[2] Because Lyondell was exiting the methanol business, it suggested to Cox, Moyers, and Brueggeman that they should contact Southern Chemical to secure a methanol supply for Lyondell's existing customers.

Southern Chemical is one of the largest importers of chemicals in North America. Vey Spin serves as President of Southern Chemical, and Vey's son, Jan Spin, serves as a director. Cox had discussions with Southern Chemical that led to the formation of Southern Garrett, a limited liability company, around October 2002. Southern Garrett was owned equally by Moyers, Brueggeman, Cox, and Southern Chemical, each owning a 25% interest. The purpose of Southern Garrett was to acquire Lyondell's methanol distribution business and to diversify into other markets.

---

1. Garrett Petrochemicals is a subsidiary of Garrett Oil.

2. Lyondell and Garrett Petrochemicals signed an agreement on November 1, 2002.

Although Southern Garrett had some rough times due to fluctuations in the methanol market, the company experienced success. However, Cox and Vey Spin had differences of opinion that culminated in an August 19, 2003 meeting in which the members discussed purchasing Cox's 25% interest in Southern Garrett. The evidence conflicted as to the terms of Cox's withdrawal from Southern Garrett. Cox believed that he had agreed to a buyout in the amount of $550,000 in the August 19 meeting, and he drafted a letter to Southern Garrett accepting the alleged offer. The other members of Southern Garrett, however, believed the buyout price for Cox's 25% interest was an amount to be determined once they had evaluated the financials of the company.

On August 25, 2003, Southern Garrett sent a letter proposing a buyout figure of $500,000 based on profits after certain deductions for bonuses for non-partner employees. The letter stated, "Your signed acceptance of the aforementioned items constitutes the full agreement that your ownership and consequently any rights to past, present, and future profits in [Southern Garrett] will be relinquished in full as of August 31, 2003." Cox refused to sign the letter. However, on September 29, 2003, Southern Garrett delivered a second letter to Cox, offering to buy him out effective August 31, 2003 for $506,208.91, along with a check in that amount. The letter contained a release of liability, which Cox did not sign. The memo line of the check read "G. Thomas Cox Buyout of Southern Garrett, L.L.C." Cox cashed the check on September 30, 2003.

On April 6, 2004, Cox sued the defendants after receiving a letter from Southern Garrett's accountants that said 2004 would be Cox's last year as a member. In his sixth amended petition, Cox alleged breach of fiduciary duty, breach of contract, conspiracy, common law fraud by non-disclosure, piercing the corporate veil, and conversion, and he sued for an accounting. The defendants denied the allegations, asserted affirmative defenses, and filed a counterclaim.[3]

After the close of Cox's case in chief, the defendants moved for directed verdict on a variety of Cox's claims. The trial court ruled as a matter of law that Cox had withdrawn from membership in Southern Garrett, and it granted a directed verdict on all of Cox's claims except the claim that Cox and Southern Garrett had entered into an agreement whereby Southern Garrett would purchase Cox's 25% interest for $550,000. After it granted the directed verdicts, the trial court made it clear to the parties that the court considered the case to be "a breach of contract case of plaintiff against Southern Garrett for the sum of $44,000 something" and that the only issue left to try was whether Cox and Southern Garrett had an agreement for Southern Garrett to pay Cox $550,000 for Cox's 25% interest. The question whether there was such an agreement was submitted to a jury, which answered the question in the negative.[4] Cox filed a motion to vacate or modify the judgment, or in the alternative, for new trial. The trial court denied Cox's motion for new trial on November 11, 2005. On appeal, Cox does not challenge the jury's finding that there was no such agreement.

---

**3.** The trial court granted judgment in favor of Cox on the defendants' counterclaim. The defendants do not challenge this ruling on appeal.

**4.** Question 1 asked the jury, "Did Tommy Cox and Southern Garrett, L.L.C., agree that Southern Garrett, L.L.C., would purchase Tommy Cox's 25% share in Southern Garrett for $550,000?"

## Analysis

### Standard of Review

A trial court may direct a verdict either when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cortez v. HCCI–San Antonio, Inc.*, 131 S.W.3d 113, 120 (Tex.App.-San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex.2005). In reviewing the granting of a directed verdict, we follow the standard of review for assessing the legal sufficiency of the evidence. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *see generally City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005). In reviewing the trial court's granting of an instructed verdict, the evidence must be considered in the light most favorable to the party against whom the verdict is instructed. *Texas Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex.1977). We must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). If there is any such evidence on any theory of recovery, a determination of that issue is for the jury. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). We can consider any reason why the directed verdict should have been granted, even if not stated in the party's motion. *Gonzales v. Willis*, 995 S.W.2d 729, 740 (Tex.App.-San Antonio 1999, no pet.).

### Membership Regulations

In his first issue, Cox argues that the "trial court erred when it refused to enforce Southern Garrett's Membership Regulations—the sole agreement among Southern Garrett's members—regarding the disposition and acquisition of membership interests."

He contends that the trial court erred by not enforcing this paragraph of the Membership Regulations because Moyers admitted at trial that he did not comply with paragraph 4.2 with respect to the disposition of Cox's interest. In effect, Cox argues that the evidence showed that the defendants breached a contract, namely the Membership Regulations. Cox further argues that a disposition of his 25% interest could not "become effective until [paragraph] 4.2 of the Regulations had been satisfied." Thus "any 'attempted disposition' of Cox's 25% interest was 'void' under Paragraph 4.2," and "[i]f the disposition of Cox's 25% interest in Southern Garrett was 'void,' then, in accordance with the Regulations, ownership of Cox's original 25% of Southern Garrett *still resides in Cox.*" (Emphasis added.) Cox argues that, because he is still a member in Southern Garrett, the "Regulations entitle Cox to receive membership distributions."

The defendants argue that paragraph 4.2 does not apply to Cox's withdrawal because it was meant to apply only to the disposition from a member to an outside party of Southern Garrett, i.e., a non-member. Because Cox, a member of Southern Garrett during the August 19, 2003 meeting, was attempting to sell his interest back to Southern Garrett, the operative section is paragraph 4.5 of the Membership Regulations, entitled "Distribution to Withdrawing Members."

Because the trial court granted a directed verdict on Cox's allegations that Southern Garrett's Membership Regulations had been breached and held that Cox had withdrawn from the company, despite Cox's contentions that he did not withdraw, we address Cox's arguments that as a matter of law "an agreement for Cox to sell his

25% interest ... could [not] have become effective until [paragraph] 4.2 of the Regulations had been satisfied" and that "any 'attempted disposition' of Cox's 25% interest was 'void' under Paragraph 4.2."

▇▇ In construing a contract, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). A contract is ambiguous when its meaning is uncertain and doubtful or when it is susceptible to more than one reasonable interpretation. *Id.* However, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003).

▇▇ The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and, in the case of a written contract, (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex.App.-San Antonio 1999, pet. denied). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did, and not on their subjective state of mind. *Copeland,* 3 S.W.3d at 604.

*Paragraph 4.2*

▇▇ Cox argues that paragraph 4.2 of the Membership Regulations, entitled "Restrictions on the Disposition of a Membership Interest," governs the disposition of membership interests, including the sale of his interest in Southern Garrett to the other members. Cox contends that paragraph 4.2 of the Membership Regulations governs the disposition of his membership interest in Southern Garrett and that the defendants failed to comply with paragraph 4.2, so that his withdrawal from the company was void.

Paragraph 4.2 provides:

4.2 ***Restrictions on the Disposition of a Membership Interest.*** No Member of the Company may dispose of all or any portion of his Membership Interest without the consent of a Required Interest and except in compliance with this Paragraph 4.2. Any attempted Disposition in violation hereof shall be void. As a condition of any purported Disposition of a Membership Interest or any portion thereof:

(a) The Manager must receive, on behalf of the Company, a document (i) executed by both the Member effecting the Disposition (or, if applicable, the Member's legal representative) and the Person to whom the membership Interest, or part thereof, is to be disposed; (ii) including the notice address of any Person to be admitted and such Person's agreement to be bound by the Articles and these Regulations; and (iii) setting forth the new Sharing Ratios (after the proposed Disposition) of the Member effecting the Disposition and the

Person to whom the Membership Interest or part thereof is to be Disposed.

In the definitions' section of the regulations, the term "Person" is defined as the "meaning given that term in article 1.02(A)(4) of the Act." The current version of the Limited Liability Act defines "Person" as:

an individual, corporation, business trust, estate, trust, custodian, trustee, executor, administrator, nominee, partnership, registered limited liability partnership, limited partnership, association, limited liability company, government, governmental subdivision, governmental agency, governmental instrumentality, and any other legal or commercial entity, in its own or representative capacity. Any of the foregoing entities may be formed under the laws of this state or any other jurisdiction.

TEX.REV.CIV. STAT. ANN. art. 1528n § 1.02(A)(4) (Vernon Supp.2006). The term "Person" does not include the term "Member" as used in paragraph 4.2. The regulations define "Member" as "any Person executing these Regulations or hereafter admitted to the Company as a Member as provided in these Regulations, but does not include any Person who has ceased to be a Member in the Company."

Although Cox complains that the manager did not receive the documents called for in paragraph 4.2(a), a plain reading of Article 4 demonstrates that paragraph 4.2 applies to the disposition of Membership Interests to Persons who are not Members. The purpose of paragraph 4.2 is to provide rules for the disposition of a Member's interest to a non-member, i.e., a person who has not been admitted to the limited liability company. Various subsections within paragraph 4.2 use the phrase "Person to be admitted" which supports our interpretation that "Person" in paragraph 4.2 refers only to non-members of the company. We hold, therefore, as a matter of law, that paragraph 4.2 would apply only if Cox were selling his interest to an outside party who was not at that time a member of Southern Garrett. Thus, to the extent that Cox asked the trial court to enforce section 4.2 of the Membership Regulations, the trial court properly refused to do so because paragraph 4.2 is not applicable to the facts of this case.

*Paragraph 4.5*

■ The defendants contend that paragraph 4.5 of the Membership Regulations govern the terms of a Member's withdrawal from the company and that the company complied with section 4.5 upon Cox's withdrawal. Paragraph 4.5 provides:

4.5 ***Distribution to Withdrawing Members.*** For purposes of this paragraph, a Member shall be deemed to have withdrawn from the Company upon such Member's voluntary withdrawal, death, judicially determined incompetence, retirement, resignation, expulsion, bankruptcy or dissolution, or any other event which terminates the continued membership of a Member. Unless such withdrawal shall result in the dissolution of the Company, and subject to § 5.09 of the Act, a withdrawing Member shall be entitled to receive the fair value of the withdrawing Member's interest.

(a) The "fair value of the Membership Interest shall be determined as of the first day of the month following the date of the occurrence giving rise to the Member's withdrawal ("Determination Date").

(b) Within 180 days from the Determination Date, the Company and the withdrawing Member (or his

legal representative, if applicable) shall attempt to agree upon the fair value of the Member's Membership Interest.

Here, the evidence showed that on August 19, 2003, after the Members' meeting, Cox gave a letter to Southern Garrett accepting Southern Garrett's alleged offer to buy his 25% ownership interest in Southern Garrett for $550,000. Cox wanted this deal, notwithstanding the regulations, because he wanted to receive his buyout sooner rather than later. The evidence also showed that Southern Garrett sent a letter to Cox on August 25, 2003, offering a buyout of Cox's 25% ownership interest for $500,000, to be effective August 31, 2003. The letter states that "it is important that the partnership has a complete and thorough understanding of the conditions, procedures, and conclusions by which your [25%] ownership, hereinafter referred to as ownership, in [Southern Garrett] will be handled *upon your exit from the company.*" (Emphasis added.) Cox did not sign this letter.

Southern Garrett sent a second letter on September 24, 2003 that included a new buyout figure of $506,208.91, but retained the August 31, 2003 buyout date. Both the August 25 and September 24 letters stated that the purchase price of Cox's 25% ownership interest would be calculated based on the retained earnings of Southern Garrett as of August 31, 2003, i.e., on the last day of the month in which Cox's withdrawal occurred. Enclosed within the envelope of the September 24, 2003 letter was a check for $506,208.91. This offer substantially complied with paragraph 4.5 of the Membership Regulations. Cox deposited the $506,208.91 check into his account, indicating his acceptance of the figure.

We hold that the language of the September 24, 2003 letter was sufficient to constitute an offer for Cox's Membership Interest in Southern Garrett and that Cox's act of depositing the check was an acceptance of the offer. The relevant language of the September 24 letter that included the check Cox deposited reads:

Your signed acceptance of the aforementioned items constitutes the full agreement that your ownership and consequently any rights to past, present, and future profits in SG will be relinquished in full as of August 31, 2003. Furthermore, you waive any future rights or claims to ownership, compensation, contracts, properties, representation, or any business activities directly or indirectly pertaining to the management and operation of Southern Garrett, LLC. As a result, G Thomas Cox will be released from any and all current and future liabilities related to the operation of Southern Garrett, LLC.

Although Cox did not sign the September 24 letter, by signing and depositing the check for $506,208.91 Cox accepted the buyout of his ownership interest in Southern Garrett and completed his effective withdrawal from the company effective August 31, 2003.

We overrule Cox's first issue.

### Breach of Fiduciary Duty

In his second issue, Cox argues that the "trial court erred when it granted directed verdict against Cox on his claim for breach of fiduciary duty." Cox argues that three sets of circumstances support a finding of a fiduciary relationship, at least among Moyers, Southern Chemical, and Brueggeman, the co-owners of the closely-held corporation Southern Garrett, which repurchased Cox's 25% Membership Interests. First, Cox argues that a fiduciary relationship may be created through the repurchase of a shareholder's stock in a closely held corporation. Second, he argues that a fiduciary relationship may be created in a closely held corporation in which the shareholders operate more as partners

than in strict compliance with corporate form. Third, he contends that when a fiduciary profits or benefits in any way from a transaction with a beneficiary of the fiduciary relationship, a presumption of unfairness arises that shifts both the burden of producing evidence and the burden of persuasion to the fiduciary to show that the transaction was fair and equitable to the beneficiary.

In his sixth amended petition, Cox alleged that defendants breached their fiduciary duties to him by "their various defalcations, self-dealing, dishonesty, void transfers of ownership in Southern Garrett, and failure and refusal to disclose facts and account to Cox for profits." He also asked the trial court to "enforce the Regulations by setting aside the void and fraudulent transfers of ownership interests in Southern Garrett to Excelerate and Korkmas and to impose a constructive trust on the assets thereof for the benefit of Cox." On appeal, Cox contends that defendants breached their fiduciary duty to him by failing to "show that the transaction in which they sought to acquire Cox's 25% interest in Southern Garrett was fair and equitable to Cox."

As we held with respect to Cox's first issue, section 4.2 of the Membership Regulations does not apply and Cox withdrew from Southern Garrett effective August 31, 2003. Because Cox's breach of fiduciary duty claim in regard to voiding his 25% Membership Interest depended on his section 4.2 argument, his claim fails as a matter of law. Cox's breach of fiduciary duty claim in regard to the fraudulent transfers of ownership to Excelerate and Korkmas likewise fails because both of those transactions occurred after Cox had withdrawn from Southern Garrett. Because Cox was no longer a Member after that date, Southern Garrett owed him none of the duties owed members after that date. Accordingly, we conclude that the

trial court properly granted directed verdict because the evidence conclusively proves Southern Garrett's right to judgment as a matter of law.

We overrule Cox's second issue.

### Piercing the Corporate Veil

In his third issue, Cox argues that the "trial court erred when it granted directed verdict against Cox on his claim for piercing the corporate veils of Excelerate and ABC Chemical."

The various doctrines for piercing the corporate veil are not substantive causes of action. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex.1991). Rather, they are a means of imposing on an individual a corporation's liability for an underlying cause of action. *See Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 297 (Tex.App.-El Paso 1991, no writ) (citing *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex.Civ.App.-Fort Worth 1970, no writ)). "Without an underlying cause of action creating corporate liability, evidence of an abuse of the corporate form is immaterial." *See Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 147 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

Because we have already concluded that Cox effectively withdrew from the company no later than August 31, 2003 and that any causes of action in regard to piercing the corporate veil happened after this date, we likewise conclude that the trial court properly granted directed verdict on Cox's piercing the corporate veil theories.

We overrule Cox's third issue on appeal.

### Conclusion

We affirm the judgment of the trial court.