**Opinion issued June 18, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00829-CV

———————————

## LEIGH GOMER, Appellant

## V.

## DONALD DAVIS, RUBY DAVIS, ALTHA/ANN STEINLAGE, Appellees

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2011-01203

## O P I N I O N

Leigh Gomer sued appellees, Donald Davis, Ruby Davis, and Ann Steinlage

(collectively, "Davis"), for conversion of a purebred poodle. During a bench trial,

the trial court rendered a directed verdict in favor of Davis and imposed $5,000 in

sanctions against Gomer and her attorney for bringing a frivolous lawsuit. In two issues, Gomer contends that (1) the trial court erred in granting a directed verdict because she presented legally sufficient evidence that she owned the dog and (2) the trial court erroneously imposed sanctions.

We vacate the imposition of sanctions against Gomer only. We affirm the remainder of the trial court's judgment.

## Background

Gomer had been friends with Jane Artall, Donald Davis's mother, since the mid-1980's. Gomer and Artall were both dog breeders, and throughout the course of their friendship, they occasionally bred each other's dogs. Artall obtained a purebred poodle shortly after its birth in April 2007. Gomer testified that Artall gave this dog to her in August 2008 "[b]ecause she was afraid she was going to die soon and she wanted someone to care for the dog."

Gomer testified that she had the dog in her possession from August 1, 2008, partway through September 2008 and that she also "had him on numerous occasions after that." She stated that she returned the dog to Artall's possession in September 2008 because Artall "loved the animal and it was our agreement that she have him in her home." According to Gomer, Artall told her that "because [Gomer] took care of [the dog] she wanted me to keep him."

2

Artall, who was in poor health, had possession of the dog when she was not in the hospital, and Gomer had possession of the dog while Artall was in the hospital. Gomer had possession of the dog from late March through mid-April 2010, while Artall was in the hospital, but she then gave possession of the dog to Davis when Artall was released from the hospital. When Artall went to a rehabilitation facility in April 2010, Ann Steinlage took possession of the dog. Gomer picked up the dog from Steinlage in September 2010, kept the dog with her for two or three weeks, and brought the dog back to Artall. The dog remained with Artall until she died on November 1, 2010. Gomer estimated that during the period of time from September 2008 until Artall's death in November 2010, Gomer had possession of the dog for "about 10 percent of the time," and Artall had possession of the dog for the remaining time.

The day after Artall died, Donald Davis picked up the dog from her apartment. Several days later, Gomer and her husband went to Davis's house to ask him to give her the dog, and Ruby Davis, Donald's wife, refused to let Gomer speak to him. The Davises refused to give Gomer the dog, and Gomer ultimately sued the Davises and Steinlage for conversion.

The trial court admitted a form created by the American Kennel Club ("AKC"), purporting to transfer registration of ownership of the dog from Artall to Gomer. This form was dated August 1, 2008. Both Artall and Gomer signed this

form, and Gomer testified that she mailed the form to the AKC. Gomer acknowledged, however, that she did not mail the form to the AKC until November 2010, after Artall had died. Gomer also acknowledged that, until Artall's death, she never claimed to Davis that she owned the dog.

On cross-examination, Davis's counsel and Gomer had the following exchange:

[Counsel]: In your pleadings, Mrs. Gomer, you indicate that you did not ever expect or intend to have possession of this dog until after Mrs. Artall's death; is that accurate?

[Gomer]: Except for periods of time whenever she was unable to care for him or I was breeding him.

When asked why she sued Steinlage, Gomer responded that the dog "was supposed to be with [Artall] and [Artall] only until she died" and that Steinlage removed the dog from Artall's apartment without permission.

Davis moved for a directed verdict. The trial court granted the motion. The court stated, "Judgment for the defendant. I want an application for attorney's fees for a frivolous case against counsel and against Ms. Gomer for bringing this case; and we'll deal with that when that is made." Davis subsequently moved for sanctions pursuant to Texas Rule of Civil Procedure 13 and Civil Practice and Remedies Code Chapter 10, although he did not identify which subsections of Civil Practice and Remedies Code section 10.001 that he believed Gomer had violated. Davis requested sanctions in the amount of $9,125, representing

4

reasonable attorney's fees and costs. In response, Gomer argued that she had presented evidence to support all elements of her claim and that she participated in good-faith negotiations to resolve the matter without resorting to trial. Gomer also attached her affidavit, in which she averred:

> This case was brought in good faith based on my belief of the truth of the allegations made and the evidence presented; mainly that Jane Artall gave the dog to me, signed and then delivered the registration papers and the dog to me. I brought this claim in all good [conscience], with no interest to improperly burden the Court. Also, offers to settle the case were made and seriously considered prior to trial. This claim was brought with honest intentions and respect for this Court.

On July 11, 2011, the trial court signed a final judgment, which stated that "[t]he Court FINDS that the motion for directed verdict is well taken, that the suit by Plaintiff is entirely frivolous and without merit, and that Defendants' motion should be GRANTED." The judgment then stated:

> It is, therefore, ORDERED, ADJUDGED, AND DECREED that Plaintiff take nothing by reason of this suit, that Plaintiff's suit is frivolous and without merit, and that judgment be and is here by entered for Defendants ALTHA/ANN STEINLAGE, DONALD DAVIS AND RUBY DAVIS jointly and against Plaintiff, LEIGH GOMER and her counsel, PATRICK G. HUBBARD, individually, jointly and severally, as sanctions pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 10.004 and Rule 13, Texas Rules of Civil Procedure, for Defendants' reasonable attorney fees, expert witness fees and costs incurred in this cause in the amount of [$5,000].

Gomer moved for a new trial and argued, "The portion of the judgment of the court finding that the suit by Movant is entirely frivolous and without merit is

5

contrary to the law and is contrary to the weight of the evidence. Further, the award of sanctions based on that finding is unjust." The trial court denied Gomer's motion for new trial.

**Directed Verdict**

In her first issue, Gomer contends that the trial court erred in granting a directed verdict on her conversion claim because she presented legally sufficient evidence that she received the dog as a gift from Artall and thus had an ownership interest in the dog.

### A. Standard of Review

A trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 578 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A directed verdict is appropriate when reasonable minds can draw only one conclusion from the evidence. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 476 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). In reviewing the granting of a directed verdict, we follow the standard of review for assessing the legal sufficiency of the evidence. *Cox*, 245 S.W.3d at 578. We consider the evidence in the light most favorable to the party against whom the

6

verdict is directed. *Id.*; *see also S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996) ("In reviewing a directed verdict, we examine the evidence in the light most favorable to the person suffering an adverse judgment."). We must determine if there is any conflicting evidence of probative value that raises a material fact issue. *Cox*, 245 S.W.3d at 578; *Smith*, 23 S.W.3d at 476 ("If the Smiths introduced some evidence on each of the elements for design defect, the trial court erred in granting Aqua-Flo's motion for directed verdict."). We can consider any reason why the directed verdict should have been granted, even if the reason is not stated in the party's motion. *Cox*, 245 S.W.3d at 578 (citing *Gonzales v. Willis*, 995 S.W.2d 729, 740 (Tex. App.—San Antonio 1999, no pet.)).

### B. Evidence of Gift

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Lopez v. Lopez*, 271 S.W.3d 780, 788 (Tex. App.—Waco 2008, no pet.). To establish the existence of a valid inter vivos gift, the plaintiff must show (1) that the donor intended to make a gift; (2) delivery of the property; and (3) acceptance of the property by the donee. *Nipp v. Broumley*, 285 S.W.3d 552, 558 (Tex. App.—Waco 2009, no pet.); *Edwards v. Pena*, 38 S.W.3d 191, 197 (Tex. App.—Corpus Christi 2001, no pet.). The plaintiff establishes the requisite donative intent by, among other things, "evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an

7

immediate and unconditional vesting of such interests in the donee." *Nipp*, 285 S.W.3d at 559 (emphasis in original); *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.) ("[T]o be a gift in praesenti [at the present time], the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee."). Until the donor has absolutely and irrevocably divested herself of the title, dominion, and control of the subject of the gift, she has the power to revoke the gift. *Edwards*, 38 S.W.3d at 197; *see also Troxel*, 201 S.W.3d at 296 ("All dominion and control over the property must be released by the owner."). The donee does not have ownership of the subject of the gift until complete ownership has been transferred from the donor to the donee. *Edwards*, 38 S.W.3d at 197. An inter vivos gift must be absolute and not open for future reconsideration. *Soto v. First Gibraltar Bank, FSB San Antonio*, 868 S.W.2d 400, 403 (Tex. App.—San Antonio 1993, writ ref'd); *see also Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex. App.—Texarkana 1996, no writ) (holding that, as matter of law, plaintiff did not show present donative intent because donor intended for property to remain his until his death); *Woodworth v. Cortez*, 660 S.W.2d 561, 564 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) ("A gift may generally not be made to take effect in the future since a mere promise to give is unenforceable without consideration.").

Here, Gomer testified that Artall transferred ownership of the dog to her on August 1, 2008, and that she took possession of the dog at this time. She also testified, however, that she brought the dog back to Artall in mid-September 2008 and that, over the next two years, she only possessed the dog when Artall was in the hospital. Gomer estimated that she had possession of the dog for approximately ten percent of the time from August 1, 2008, until Artall's death on November 1, 2010. Gomer agreed with Davis's counsel that, except for periods when Artall could not care for the dog or when Gomer was breeding the dog, she did not expect to have possession of the dog until after Artall's death. When Davis's counsel asked why she sued Steinlage, who had taken possession of the dog when Artall was in a rehab facility and who brought the dog to Davis after Artall's death, Gomer responded that the dog "was supposed to be with [Artall] and [Artall] only until she died." Although the trial court admitted a transfer of ownership form, signed by Artall and Gomer and dated August 1, 2008, Gomer acknowledged that she did not attempt to file this form with the AKC until after Artall died. Gomer also testified that she never made a claim of ownership over the dog to Davis until after Artall died.

Gomer thus presented no evidence that Artall intended an "immediate and unconditional divestiture" of her ownership interest in the dog and an "immediate and unconditional vesting of such interests" in Gomer when Artall first allowed

9

Gomer to have possession of the dog. *Nipp*, 285 S.W.3d at 559; *Troxel*, 201 S.W.3d at 297. To the contrary, the evidence reflects that Artall intended to continue to exercise dominion and control over the dog until her death. *Troxel*, 201 S.W.3d at 296; *Edwards*, 38 S.W.3d at 197; *Dorman*, 932 S.W.2d at 228. We therefore conclude that Gomer failed to establish the existence of a valid inter vivos gift. *See Nipp*, 285 S.W.3d at 559; *Troxel*, 201 S.W.3d at 297; *Edwards*, 38 S.W.3d at 197.

We hold that because Gomer presented no evidence that Artall intended to make an absolute and irrevocable gift of the dog when she first allowed Gomer to have possession in August 2008, the trial court correctly directed a verdict in favor of Davis. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77; *Cox*, 245 S.W.3d at 578; *Smith*, 23 S.W.3d at 476.

We overrule Gomer's first issue.

## Sanctions

In her second issue, Gomer contends that the trial court erred in finding that her claim was frivolous and in awarding $5,000 in attorney's fees as sanctions pursuant to Rule 13 and Civil Practice and Remedies Code Chapter 10.

### A.    *Standard of Review*

The imposition of sanctions pursuant to both Rule 13 and Chapter 10 is within the discretion of the trial court, and we therefore review the court's

sanctions order for an abuse of discretion. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Mattox v. Grimes Cnty. Comm'rs Ct.*, 305 S.W.3d 375, 386 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Greene v. Young*, 174 S.W.3d 291, 297 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). We may reverse the trial court's ruling on a sanctions order only if the court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Low*, 221 S.W.3d at 614 (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). Generally, courts presume that parties file pleadings in good faith. *Id.* (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993)). The party seeking the imposition of sanctions bears the burden of overcoming this presumption of good faith. *Id.* (citing *GTE Commc'ns Sys.*, 856 S.W.2d at 731).

### B.      Sanctions Under Rule 13

Rule 13 permits sanctions against attorneys and represented parties who file a groundless pleading in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13; *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 707 (Tex. App.—Waco 2008, pet. denied); *Greene*, 174 S.W.3d at 301. The party seeking to impose sanctions pursuant to Rule 13 must demonstrate first that the opposing party's pleadings are groundless, and then the party must demonstrate that the groundless pleadings were either filed in bad faith or filed for the purpose of harassment. *Dawson*, 258 S.W.3d at 707; *see also GTE Commc'ns Sys.*, 856 S.W.2d at 731

11

("To impose sanctions under Rule 13, the district court was also required to find that GCSC's assertions were made in bad faith or for the purpose of harassment."). A pleading is "groundless" if it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13; *Dawson*, 258 S.W.3d at 708.

When imposing Rule 13 sanctions, the trial court is required to state the particulars of good cause justifying the sanctions. *See* TEX. R. CIV. P. 13 ("No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order."); *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). The trial court abuses its discretion if it fails to comply with this requirement. *See Robson*, 267 S.W.3d at 407; *Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 135 (Tex. App.—Texarkana 2000, no pet.). However, if, as here, the party against whom sanctions are imposed does not object to the form of the sanctions order, that party waives any objection to the absence of a bad faith or harassment finding. *See Robson*, 267 S.W.3d at 407; *Mecom*, 28 S.W.3d at 136 ("[B]y failing to make a timely objection, Texas-Ohio waived its complaint regarding the particularity of the sanction order."). In that circumstance, we consider whether the record contains any evidence to support an implied finding that the plaintiff brought her claim in bad faith or for the purpose of harassment. *See Robson*, 267 S.W.3d at 407.

Improper motive is an essential element of bad faith. *See id.* Bad faith is more than just bad judgment or negligence; bad faith "means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Id.* In deciding whether the plaintiff filed a pleading in bad faith or for the purpose of harassment, the trial court must measure the plaintiff's conduct and examine the facts available to the plaintiff at the time the relevant pleading was signed. *See Mecom*, 28 S.W.3d at 139. The plaintiff's petition alone cannot establish that she brought the case in bad faith or for the purpose of harassment. *Id.* Therefore, Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination about the motives and credibility of the person signing the petition. *Id.* In some circumstances, the trial court may be able to make a determination by taking judicial notice of the case file. *Id.* The trial court abuses its discretion in imposing sanctions under Rule 13 if there is no evidence in the record for the court to determine that the plaintiff brought her petition in bad faith or for the purpose of harassment. *Id.*

Here, the trial court did not hold an evidentiary hearing concerning whether Gomer filed suit in bad faith or for the purpose of harassment. Instead, after the trial court granted a directed verdict in favor of Davis, it stated, "I want an application for attorney's fees for a frivolous case against counsel and against Ms. Gomer for bringing this case; and we'll deal with that when that is made." Davis

then moved for sanctions against Gomer and her counsel pursuant to Rule 13 and Chapter 10. Davis did not attach any evidence to this motion. In her response, Gomer attached her own affidavit, averring that she brought the case in good faith "based on [her] belief of the truth of the allegations made and the evidence presented; mainly that Jane Artall gave the dog to [her], signed and then delivered the registration papers and the dog to [her]." She further stated that she "brought this claim in all good [conscience], with no interest to improperly burden the Court" and that "[t]his claim was brought with honest intentions and respect for the Court." In the final judgment, the trial court awarded $5,000 in attorney's fees and costs to Davis, assessed against both Gomer and her attorney, "as sanctions pursuant to [Civil Practice and Remedies Code section] 10.004 and Rule 13." The trial court found that Gomer's case was frivolous, but it did not make any explicit findings that she brought the suit in bad faith or for the purpose of harassment.

Because courts must presume that pleadings are filed in good faith, Gomer's petition alone cannot establish that she brought her case in bad faith or for the purpose of harassment. *Id.* As the party moving for sanctions, Davis had the burden to overcome this presumption of good faith and present evidence that Gomer filed suit in bad faith or for the purpose of harassment. *See Low*, 221 S.W.3d at 614. Davis did not attach any such evidence to his motion for sanctions, and the trial court did not hold an evidentiary hearing, as it was required to do, to

14

"make a determination about the motives and credibility of the person signing the petition." *Mecom*, 28 S.W.3d at 139. The trial court thus had no evidence before it to determine that Gomer filed suit in bad faith or for the purpose of harassment. *See id.* Because Rule 13 requires both that the claims be groundless and that the suit be filed in bad faith or for the purpose of harassment, and the record lacks sufficient evidence to support a determination that Gomer filed her petition in bad faith or to harass, we conclude that the trial court abused its discretion to the extent that it sanctioned Gomer and her attorney pursuant to Rule 13. *See id.* at 136, 139.

### C.    Sanctions Under Chapter 10

Civil Practice and Remedies Code section 10.001 provides that the signing of a pleading constitutes a certification by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1)    the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

15

> (4)     each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2002); *see also Mattox*, 305 S.W.3d at 386 ("Sanctions under chapter 10 of the Civil Practice and Remedies Code are authorized if the evidence establishes that (1) a pleading or motion was brought for an improper purpose, (2) there were no grounds for legal arguments advanced, or (3) a factual allegation or denial lacked evidentiary support."). The trial court may impose sanctions on a person who has signed a pleading in violation of section 10.001. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (Vernon 2002).

In the final judgment, the trial court stated that it was imposing $5,000 for attorney's fees as a sanction "pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 10.004." Section 10.004 simply allows a trial court to sanction a person who violates a subsection of section 10.001. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a). The trial court did not identify in the final judgment what subsection of section 10.001 it determined that Gomer had violated, and it did not explain the basis for the sanction other than to state that Gomer's suit was "frivolous and without merit."[1] *See id.* § 10.005 (Vernon 2002) (requiring trial court to "describe

---

[1]     Similarly, in the motion for sanctions, Davis failed to "describe[e] the specific conduct violating Section 10.001." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(a) (Vernon 2002).

16

in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed"). We therefore consider each subsection of section 10.001.

As with sanctions under Rule 13, to impose sanctions under section 10.001(1), the trial court must hold an evidentiary hearing to make the necessary factual determinations about the party's or the attorney's motives and credibility. *Dawson*, 258 S.W.3d at 709. The party moving for sanctions must prove the pleading party's subjective state of mind, and, thus, without an evidentiary hearing, the court lacks evidence to determine whether a pleading was filed in bad faith or for the purpose of harassment. *Id.* at 710. Here, as with the sanctions under Rule 13, we conclude that insufficient evidence supports a finding that Gomer and her attorney violated section 10.001(1).

Section 10.001(4) refers to denials of a factual contention made in a pleading and is inapplicable here. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(4) (Vernon 2002). Section 10.001(2) provides that a signatory to a pleading certifies that "each claim, defense, or other legal contention in the pleading . . . is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* § 10.001(2). This section appears to be the most likely basis for sanctions, given Gomer's contention that Artall made a valid inter vivos gift of the dog despite uncontroverted evidence

17

that Artall retained possession and control over the dog and despite Gomer's own testimony that she did not expect to receive uninterrupted possession of the dog until Artall's death. Section 10.004(d), however, provides that the trial court "may not award monetary sanctions against a represented party for a violation of Section 10.001(2)." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(d) (Vernon 2002). Here, the trial court imposed $5,000 in sanctions against Gomer, a represented party. Under these facts, therefore, section 10.001(2) cannot support this sanctions award against Gomer, although Gomer's attorney may be sanctioned under this section. *See Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 357 (Tex. App.—Fort Worth 1999, pet. denied); *see also Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 349–50 (Tex. App.—San Antonio 2006, pet. denied) (holding that because attorney decides which legal claims to file and party provides, at most, factual basis for claims, party "should not be punished for their attorney's conduct unless the party is implicated apart from having entrusted its legal representation," and trial court abused its discretion in sanctioning party under Chapter 10).

Thus, the only other subsection of section 10.001 that the trial court could have found that Gomer and her attorney violated is section 10.001(3). With respect to this section, the applicable standard is that, "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in a pleading has evidentiary support or, for a

18

specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Dawson*, 258 S.W.3d at 711; *see also Low*, 221 S.W.3d at 617 ("Under chapter 10 . . . [the moving party is] not required to specifically show bad faith or malicious intent, just that [the pleader] certified he made a reasonable inquiry into all of the allegations when he did not and that he certified that all the allegations in the petition had evidentiary support, or were likely to have evidentiary support, when some allegations did not."). The trial court must examine the facts and evidence available to the party and the circumstances existing when the party filed the pleading. *Dawson*, 258 S.W.3d at 711. "Sanctions for frivolous or groundless pleadings do not apply to the pursuit of an action later determined to be groundless after pleadings were filed." *Id.*

In her original petition, Gomer alleged that she acquired the dog from Artall on August 1, 2008, and she referred to the AKC transfer of ownership form, which she attached as an exhibit. She also alleged that Artall passed away before she could take possession of the dog, that Steinlage took possession of the dog upon Artall's death, and that Steinlage brought the dog to Davis. Gomer's factual allegations in her petition had evidentiary support. As we have stated, the fatal flaw in her conversion claim was that she could not establish that Artall's gift of the dog was absolute and irrevocable and thus was a valid inter vivos gift. Thus,

19

under the facts of this case, her claim was not warranted by existing law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2). However, the fact that she was ultimately unsuccessful in her claim does not control whether she should be sanctioned pursuant to section 10.001(3) for making factual allegations and contentions in her original pleading that did not have evidentiary support. *See Dawson*, 258 S.W.3d at 711. In the absence of any statement by Davis regarding which of Gomer's factual allegations and contentions lacked evidentiary support, we conclude that insufficient evidence supports a decision to sanction Gomer for violating section 10.001(3). *See Low*, 221 S.W.3d at 614 ("Generally, courts presume that pleadings and other papers are filed in good faith. The party seeking sanctions bears the burden of overcoming this presumption of good faith.").

Because we conclude that no evidence supports the trial court's decision to impose sanctions under either Rule 13 or Civil Practice and Remedies Code Chapter 10, we hold that the trial court abused its discretion to the extent that it ordered Gomer to pay $5,000 in attorney's fees to Davis as sanctions. Because Gomer's claim was not warranted by existing law, and thus violated section 10.001(2), the trial court did not abuse its discretion in assessing $5,000 in sanctions against Gomer's attorney.

We sustain Gomer's second issue in part.

## Conclusion

We vacate the award of $5,000 in attorney's fees as a sanction against Gomer, individually. We affirm the remainder of the judgment, including the award of $5,000 in attorney's fees as a sanction against Gomer's counsel.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, concurring and dissenting.