

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00124-CV

———————————————

IN THE INTEREST OF D.B. AND D.B., CHILDREN

---

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-466195-09

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Appellant D.B. (Father) and Appellee R.P. (Mother) divorced in December 2009. At the time of their divorce, Mother and Father had two children: then-seven-year-old D.B. (Dana) and then-six-year-old D.B. (Debra). Nearly ten years later, Father sued Mother, along with Appellees F.P. (Maternal Grandmother), C.H. (Paternal Grandmother), and E.B. (Aunt), under Chapter 42 of the Texas Family Code for interference with his possessory rights to his daughters. *See* Tex. Fam. Code Ann. §§ 42.001–.009.

After Father rested at trial, Mother moved for a directed verdict, which the trial court granted. Father has appealed and raises three issues: (1) the trial court erred by directing a verdict against him; (2) the trial court abused its discretion by not allowing Father to present evidence of all the instances in which he was denied access to the children; and (3) the trial court's evidentiary rulings "were so erroneous that they denied [him] of his right to trial by jury." We will affirm.

## I. Background

On October 17, 2019, Father—then proceeding pro se—sued Mother, Maternal Grandmother, Paternal Grandmother, and Aunt for interference with his possessory rights to Dana and Debra under the trial court's January 3, 2018 "Order in Suit for Modification of Support Order and to Confirm Support Arrearage and Order to Modify Access" and "Father's Visitation Schedule," which was attached to the

modification order and incorporated by reference.[1] Father pleaded four specific instances of interference with his possessory rights under the modification order and visitation schedule:

- On Friday, March 29, 2019, Mother failed to surrender the children to Father at her residence at 8:00 p.m., and Mother and Maternal Grandmother took or retained possession of the children or concealed the children's whereabouts in violation of Father's court-ordered possessory rights;

- On Friday, August 16, 2019, Mother and Maternal Grandmother failed to surrender the children to Father at Mother's residence at 8:00 p.m., and Maternal Grandmother retained possession of the children or concealed the children's whereabouts in violation of Father's court-ordered possessory rights;

- On Friday August 2, 2019, Paternal Grandmother and Aunt aided or assisted Mother in taking or retaining possession of the children or aided and assisted Mother (1) in taking the children out of the county with the intent to deprive Father and the trial court of authority over the children and (2) in concealing the children's whereabouts in violation of Father's court-ordered possession rights; and

---

[1]Father attached the modification order and the visitation schedule to his petition. The visitation schedule provided, among other things, that unless the parties mutually agreed in advance, Father would have possession "[o]n weekends throughout the year from 4 p.m. on the first, third, and fifth Friday of each month until 6 p.m. on the following Sunday." In his petition, however, Father claimed that the possession-and-access schedule provided, "It is Ordered each First, Third, and Fifth Friday of each month, that the Parent in Possession of the Children shall have the Children available at the parent's residence between the hours of 8:00 p.m. and 8:30 p.m. Central Standard Time." This appears to be a combination of the weekend-possession provision in the visitation schedule and the telephone-contact provision in the modification order.

- On Friday, September 6, 2019, Paternal Grandmother and Aunt aided or assisted Mother in taking or retaining possession of the children from Father.

Father further pleaded that Maternal Grandmother, Paternal Grandmother, and Aunt were jointly and severally liable for their conduct in aiding or assisting Mother's wrongful conduct. *See id.* § 42.003. He generally pleaded that "[o]n two or more occasions," Mother, Maternal Grandmother, Paternal Grandmother, and Aunt failed to comply with a court order by failing to surrender the children to Father as ordered.

Mother, Maternal Grandmother, Paternal Grandmother, and Aunt each answered with a general denial.

The case was tried to a jury in March 2022. Father, Mother, and Maternal Grandmother appeared. Paternal Grandmother and Aunt did not appear.

Before Father called his first witness, the trial court ruled that he could not offer evidence of instances of alleged interference other than the four specific instances that he had pleaded.[2] When Father tried to offer or elicit testimony regarding other instances, Mother variously objected on outside-the-pleadings and relevancy grounds, and the trial court sustained those objections.

Father offered—and the trial court admitted—the modification order into evidence, but the visitation schedule was not attached. Father testified that he was denied possession of the children on the four specific dates alleged in his petition.

---

[2]At trial, Father identified his live pleading as his October 17, 2019 pleading, the relevant parts of which are set out above.

4

Father further testified that according to the modification order, his pick-up time for his daughters was between 8:00 and 8:30 p.m.

Father also testified that he had called the police to report the interference with his possession. When Father offered into evidence a police report related to the alleged violation on March 29, 2019, Mother objected to the report as hearsay. After the trial court sustained Mother's hearsay objection, Father argued that the police report was admissible under the business-records exception to the hearsay rule.[3] *See* Tex. R. Evid. 803(6). The trial court again sustained the objection. The trial court also sustained Mother's hearsay objection to Father's testimony regarding Debra's demeanor during a telephone conversation that he had with her on August 2, 2019, the date of the third alleged violation of Father's visitation rights.

Mother's and Maternal Grandmother's testimonies generally confirmed that Father did not have possession of Dana and Debra on the days that Father had alleged that he was denied possession. During Mother's testimony, Father again offered into evidence the police report related to the March 29 alleged violation, along with three other police reports. Mother objected to the reports as hearsay, and the trial court sustained that objection.

---

[3]Contrary to Father's assertions at trial and on appeal, there was no business-records affidavit authenticating the report presented at trial. *See* Tex. R. Evid. 803(6)(D), 902(10). Father did not argue that the report was admissible under the public-records exception to the hearsay rule. *See* Tex. R. Evid. 803(8).

After Father rested, Mother moved for a directed verdict, pointing out that according to Father's pleadings and testimony, Father's pick-up time was 8:00 p.m., but the visitation schedule stated that Father would have visitation starting at 4:00 p.m. on the first, third, and fifth Fridays of the month. Mother argued that she could not deny Father access if he did not know what time he was supposed to pick up the children. Father countered that his pleadings and evidence did not have to be exact and that Father's evidence showed that Mother "did not release the girls, period." The trial court stated that Father was bound to his pleadings, which "stat[ed] one thing and the order says another thing and the proof is all together a third thing." The trial court granted Mother's motion and dismissed Father's petition.[4] Father timely appealed.

## II. Father's Issues

Father raises three issues: (1) the trial court erred by granting a directed verdict; (2) the trial court abused its discretion by limiting Father to presenting evidence of the four specific instances that he had pleaded he was denied possession of or access to his daughters and by not allowing Father to present evidence of other instances he was denied possession or access; and (3) the trial court's sustaining Mother's hearsay and relevancy objections, as well as her objections to evidence as outside the scope of

---

[4]After the trial court directed a verdict against Father, Father's attorney made an offer of proof, stating that "had the Court allowed me to present evidence of all the violations," she would have presented evidence of violations occurring on about 20 specific dates, which she listed. Tex. R. Evid. 103(a)(2), (c).

6

the pleadings, effectively denied Father his right to a jury trial.[5] We address each of these issues in turn.

### III. The Trial Court's Directed Verdict

Father complains in his first issue that the trial court erred by granting a directed verdict against him because Father's testimony, coupled with Mother's and Maternal Grandmother's testimonies confirming that they had denied Father access to the children on the dates alleged, would have enabled a reasonable juror to find that Mother and Maternal Grandmother had interfered with his possession rights.

### A. Standard of review

A directed verdict in the defendant's favor is proper "when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery." *Prudential Ins. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "Stated differently, a directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment." *Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 631 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

In reviewing a directed verdict, we follow the standards for assessing legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). That is, we review the evidence in the light most favorable to the person suffering the

---

[5]None of the appellees—Mother, Maternal Grandmother, Paternal Grandmother, and Aunt—filed briefs.

adverse judgment, and we must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018); *City of Keller*, 168 S.W.3d at 822, 827. We must decide whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 220 (Tex. 2011) (op. on reh'g).

A directed-verdict motion must specifically state what grounds merit the directed verdict. Tex. R. Civ. P. 268. But the motion's failure to specify a ground is not fatal if the evidence raised no fact issues and the prevailing party is entitled to judgment as a matter of law. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 195 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Tex. Emps. Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977)). We must affirm a directed verdict even though the trial court's rationale was erroneous if the directed verdict can be supported on another basis. *Cano v. N. Tex. Nephrology Assocs., P.A.*, 99 S.W.3d 330, 339 (Tex. App.—Fort Worth 2003, no pet.). We therefore can consider any reason the directed verdict should have been granted, even if not stated in the motion. *Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Westchester Fire Ins. v. Admiral Ins.*, 152 S.W.3d 172, 191 (Tex. App.—Fort Worth 2004, pet. denied) (en banc) (op. on reh'g).

**B. Family Code Chapter 42**

Chapter 42 establishes a statutory cause of action for damages against (1) "[a] person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person" and (2) a person who aids or assists the person in such conduct. Tex. Fam. Code Ann. §§ 42.002, .003, .006. A possessory right is "a court-ordered right of possession of or access to a child, including conservatorship, custody, and visitation." *Id.* § 42.001(2). Such a right "is violated by the taking, retention, or concealment of a child at a time when another person is entitled to possession of or access to the child." *Id.* § 42.002(b).

**C. Analysis**

Here, Father specifically pleaded that (1) Mother had interfered with his possessory rights; (2) Maternal Grandmother had interfered with his possessory rights; (3) Maternal Grandmother had aided or assisted Mother; (4) Paternal Grandmother had aided or assisted Mother; and (5) Aunt had aided or assisted Mother. As noted, Chapter 42 claim can arise in two ways: (1) interfering with a possessory right or (2) aiding or assisting the one who interferes with a possessory right. *Id.* §§ 42.002–.003. "Liability for the latter is necessarily derivative of the former." *Bos*, 556 S.W.3d at 300. To prevail under any of his liability theories, Father was thus required to prove that either Mother or Maternal Grandmother interfered with his possessory rights. *See id.*; *see also* Tex. Fam. Code Ann. §§ 42.002–.003.

Father's possessory-right-interference claim under Section 42.002 required him to establish that he had the right to possession of or access to his daughters under a court order. *See* Tex. Fam. Code Ann. §§ 42.001(2), .002; *cf. In re T.M.P.*, 417 S.W.3d 557, 567 (Tex. App.—El Paso 2013, no pet.) (holding that order requiring grandparents to supervise father's visits with the children and to facilitate the children's transportation to and from visits did not grant grandparents the right of access to the children); *Hardy v. Mitchell*, 195 S.W.3d 862, 864–65 (Tex. App.—Dallas 2006, pet. denied) (holding that because the child was not the subject of a court order, claim could not be characterized as a possessory-right-inference claim under Chapter 42). Father was further required to prove that either Mother or Maternal Grandmother violated his court-ordered right to possession of or access to his daughters by taking, retaining, or concealing them at a time when he was entitled to possession of or access to them. *See* Tex. Fam. Code Ann. §§ 42.001(2), .002.

The modification order offered and admitted into evidence—which was identical to the order attached to Father's petition—provided that Father would have "standard visitation pursuant to the attached exhibit." But unlike the copy of the modification order attached to Father's petition, the copy of the modification order admitted into evidence did not have the exhibit attached. This exhibit, entitled "Father's Visitation Schedule," provided, among other things, that unless the parties mutually agreed in advance, Father would have possession "[o]n weekends throughout the year from 4 p.m. on the first, third, and fifth Friday of each month

until 6 p.m. on the following Sunday." But without the visitation schedule, there is no evidence of when Father had a court-ordered right of possession of or access to his daughters, much less of his right to possession on the days that he testified he was denied possession. Viewing all the evidence in Father's favor,[6] the evidence was thus insufficient to raise a material fact issue about whether Mother or Maternal Grandmother violated Father's court-ordered right to possession of or access to his daughters by taking, retaining, or concealing their whereabouts at a time when Father was entitled to possession of or access to them. *See id.* §§ 42.001(2), .002. The evidence is thus necessarily insufficient to raise a fact issue on Father's aiding and assisting claims against Maternal Grandmother, Paternal Grandmother, and Aunt. *See Bos*, 556 S.W.3d at 300; *see also* Tex. Fam. Code Ann. §§ 42.002–.003. We overrule Father's first issue.

---

[6]In our evidentiary review, we must credit evidence favorable to Father if a reasonable factfinder could. *See City of Keller*, 168 S.W.3d at 822, 827. When Father's attorney asked him what time the modification order said he was supposed to pick up Dana and Debra, Father read from the telephone-contact provision of the order: "Well, it says each Wednesday and each Sunday . . . the parent in possession of the children should have the children available at the parent's residence between the hours of 8 p.m. and 8:30 Central Standard Time." To the extent this evidence favors Father, a reasonable factfinder would not credit this evidence in determining whether Mother and Maternal Grandmother violated Father's court-ordered right to possession and access because (1) Father is not complaining about being denied telephone contact with his daughters and (2) his rights under the telephone-contact provision are unrelated to his possessory rights. Additionally, Father offered, and the trial court admitted, a copy of an earlier order, which included, among other things, Father's possessory rights as ordered by the trial court in February 2005. But here, Father is suing for a violation of his possessory rights under the January 2018 modification order, not the February 2005 order.

## IV. The Trial Court's Limiting Father's Evidence and Various Evidentiary Rulings

In Father's second and third issues, respectively, he argues that the trial court abused its discretion (1) by not allowing Father to present evidence of instances that he was denied possession other than the four specific instances listed in his pleadings[7] and (2) by sustaining Mother's relevancy and hearsay objections, as well as her objections to evidence as outside of the scope of the pleadings. Within these two issues, Father argues that the trial court's rulings prevented him from putting on his case and that the cumulative effect of these rulings was to deny him his right to a fair trial by jury.

Assuming that Father preserved these complaints for our review, we need not address whether the trial court abused its discretion in making these various rulings because the trial court's errors, if any, in excluding this evidence did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1), 47.1. In other words, even if the trial court had admitted the police reports, had allowed Father to testify regarding Debra's demeanor, and had allowed testimony regarding other alleged instances of Father being denied possession of or access to his daughters, this evidence (either individually or cumulatively) was insufficient to raise a

---

[7]In support of this issue, Father argues that generally pleading that "[o]n two or more occasions," Mother, Maternal Grandmother, Paternal Grandmother, and Aunt failed to comply with a court order by failing to surrender the children to him as ordered sufficed to give them fair notice that he was complaining about other instances of interference with his possessory rights. *See* Tex. R. Civ. P. 47(a).

12

fact issue on Father's Chapter 42 claims for the reasons explained above. *See* Tex. R. App. P. 44.1(a)(1). We overrule Father's second and third issues.

## V. Conclusion

Having overruled Father's three issues, we affirm the trial court's judgment.


/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: January 12, 2023