# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REMAND

## NO. 03-13-00133-CV

**Lisa Kramer, F/K/A Lisa Kastleman, Appellant**

**v.**

**Bryan Kastleman, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT**
**NO. D-1-FM-09-002598, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following remand from the Texas Supreme Court, we consider the merits of this appeal filed by Lisa Kramer, F/K/A Lisa Kastleman, (Kramer) from the trial court's corrected final decree of divorce granted to her and Bryan Kastleman (Kastleman). In four issues, Kramer contends that the trial court erred in (1) denying her motion to set aside the parties' informal settlement agreement, (2) rendering a decree that contains terms not agreed to by the parties, (3) denying her motion for new trial, and (4) awarding attorney's fees to Kastleman as sanctions against Kramer for filing a motion to set aside the informal settlement agreement. For the reasons that follow, we affirm the trial court's final corrected decree of divorce.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kramer filed for divorce in 2009. The parties attended mediation on August 12, 2011, but reached no agreement. They continued to negotiate informally and on August 15, 2011, reached an agreement concerning custody of their child. Further informal settlement discussions resulted in a property settlement agreement on August 18, 2011, which recited that the parties had reached an agreement on all issues; adopted the terms of the agreement concerning child issues, which was attached as an exhibit; and included releases of all claims by all parties.[1] The settlement agreement provided in large, bold print that it was not subject to revocation and was binding on all parties. The settlement agreement also provided that Kastleman would appear in court at the first available time to present evidence and secure rendition of judgment in accordance with the settlement agreement, which he did on August 19, 2011. At the hearing, he testified that the property division was fair and equitable and that the parenting plan was in the best interest of the child. The trial court granted the divorce.

In July 2012, prior to the trial court's signing a divorce decree, Kramer filed a motion to set aside the informal settlement agreement, and in September 2012, she filed a first amended motion to set aside, alleging in the motions that Kastleman had committed fraud by failing to

---

[1] Kramer also sued Kastleman's father and four of Kastleman's separate property companies, alleging actual and constructive fraud, breach of fiduciary duty, forgery, conversion, and conspiracy. She subsequently dismissed her claims against Kastleman's father and two of the companies. The remaining two companies were parties to the settlement agreement. In addition, Jo Sumrall intervened in the divorce proceeding asserting a justiciable interest in the real properties by virtue of her employment agreement with Kastleman. She was also a party to the settlement agreement and expressly did not release her claims against Kastleman and his companies. Sumrall is not a party to this appeal, and her claims against Kastleman are not before us.

disclose assets and by forging her name on documents. Kastleman filed a motion for sanctions against Kramer contending that all of the issues raised in Kramer's motion were known to her at the time she signed the settlement agreement and seeking attorney's fees under Rule 13 and chapter 10. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code §§ 10.001–.006. On October 8, 2012, the trial court denied Kramer's first amended motion to set aside the informal settlement agreement and granted Kastleman's motion for sanctions, awarding attorney's fees as requested for the work performed on behalf of Kastleman and his two companies in the amount of $32,215.88, and conditional sanctions in the event of an unsuccessful appeal.[2] On October 11, 2012, the trial court heard Kastleman's Motion to Sign Decree of Divorce. After ruling on the parties' requests for various clarifications and modifications to the settlement agreement, the trial court signed the divorce decree. Kramer requested, and the trial court entered, findings of fact and conclusions of law in support of the divorce decree, the denial of Kramer's motion to set aside the settlement agreement, and the sanctions order. Kramer subsequently filed motions to set aside the sanctions order and the divorce decree; a motion for new trial; and a motion to modify, correct, and reform the judgment. After hearing the motions, the trial court signed a corrected divorce decree, denied the motions to set aside the decree and for new trial, and signed an amended order granting sanctions in the same amount as previously ordered. At Kramer's request, the trial court entered revised findings of fact and conclusions of law to include findings and conclusions in support of the

---

[2] Sumrall was also awarded attorney's fees as sanctions, but Kramer does not appeal that award.

3

corrected divorce decree and amended sanctions order. In December 2012, Kramer filed a second motion for new trial, which the trial court denied.

Kramer filed an appeal with this Court. Kastleman filed a motion to dismiss the appeal on the ground that Kramer had accepted the benefits of the judgment she was appealing. We agreed and dismissed the appeal. Kramer appealed to the Texas Supreme Court, which reversed our judgment, holding that Kramer's acceptance of marital assets did not preclude her appeal, and remanded for further proceedings on the merits of Kramer's appeal. *See Kramer v. Kastleman*, 508 S.W.3d 211, 213, 232 (Tex. 2017). We turn, then, to Kramer's four issues on remand.

**STANDARD OF REVIEW**

We review most family law issues, including the issues raised in this appeal, for an abuse of discretion. *In re Marriage of C.A.S.*, 405 S.W.3d 373, 382 (Tex. App.—Dallas 2013, no pet.) (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.)). A court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding rules and principles. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re A.E.R.*, No. 05-15-00019-CV, 2016 Tex. App. LEXIS 8597, at *2 (Tex. App.—Dallas Aug. 9, 2016, pet. filed) (mem. op.). In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 383. To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had

sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Id.* A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence under the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005) (describing legal sufficiency standard of review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual sufficiency standard of review). We review a trial court's conclusions of law de novo to determine their correctness and will uphold conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Further "we will not reverse an erroneous conclusion if the trial court rendered the proper judgment." *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software*, 83 S.W.3d at 794).

"The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right." *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied). Thus, it was Kramer's burden to show not only that "an inequality in the division of the community property was manifestly unjust . . . but also that such inequality is of such substantial proportions that it constitutes an abuse of the trial court's discretion." *See King v. King*, 661 S.W.2d 252, 255 (Tex. App.—Houston [1st Dist.] 1983, no writ). As for the custody issues, there is no bright-line rule for determining what is in a child's best interest, and each case must be determined on its unique set of facts. *Lenz v. Lenz*, 79 S.W.3d 10, 18–19 (Tex. 2002); *Coburn v. Moreland*, 433 S.W.3d 809, 827 (Tex. App.—Austin 2014, no pet.). When

5

reviewing both the legal and factual sufficiency of the evidence, we are mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 505 (Tex. App.—Dallas 2013, pet. denied).

## DISCUSSION

**Trial Court's Denial of Motion to Set Aside Informal Settlement Agreement**

In her first issue, Kramer contends that the trial court erred in denying her motion to set aside the informal settlement agreement. First, Kramer argues that, contrary to the trial court's "impression," the parties' agreement was not a "mediated settlement agreement" under sections 6.602(b) and 153.0071(d) of the Family Code. *See* Tex. Fam. Code §§ 6.602(b) (providing that mediated settlement agreement in dissolution of marriage is binding on parties if it provides in prominently displayed statement that is in boldface type, in capital letters, or underlined that agreement is not subject to revocation and is signed by each party and each party's attorney who is present), (c) (providing that if agreement meets requirements of subsection (b), party is entitled to judgment on mediated settlement agreement), 153.0071(d), (e) (providing same in context of suit affecting parent-child relationship). Rather, Kramer contends that the agreement was an informal settlement agreement and an agreed parenting plan under sections 6.604(b) and 153.007 of the Family Code. *See id.* §§ 6.604(b) (providing that informal settlement agreement in dissolution of marriage is binding on parties if it provides in prominently displayed statement that is in boldface type, in capital letters, or underlines that agreement is not subject to revocation and is signed by each party and each party's attorney who is present), (d) (providing that if court find terms of informal

6

settlement agreement just and right, terms are binding on court), 153.007(a) (providing that parties may enter into written agreed parenting plan concerning conservatorship and possession of child), (b) (providing that trial court shall render judgment in accordance with agreed parenting plan if it finds that plan is in child's best interest). Kramer argues that because the agreement was an informal settlement agreement, no evidence supports the trial court's findings of fact numbers 1–3, which refer to a "Mediated Settlement Agreement"; finding of fact number 8 and conclusion of law number 8, which state that the parties complied with section 6.602(b) of the Family Code concerning mediated settlement agreements; and finding of fact number 10 and conclusion of law number 11, which state that the agreement was binding at the time it was signed.

Initially, we observe that, as Kramer points out, Kastleman does not contend that the agreement was a mediated settlement agreement within the meaning of section 6.602 of the Family Code. *See id.* § 6.602; *Lee v. Lee*, 158 S.W.3d 612, 612–14 (Tex. App.—Fort Worth 2005, no pet.) (holding that mediated settlement agreement under section 6.602 requires mediation). Further, in finding of fact number 1, the trial court found that the parties signed a "Mediated/Informal Settlement Agreement" and thereafter referred to the agreement as the "Settlement Agreement." Other references were to "the Mediated Settlement Agreement for the Child," and, as indicated, referred to the agreement concerning the parties' child, which was titled "Mediated Settlement Agreement." In addition, the trial court found that the agreement complied with both sections 6.602(b) and 6.604(b) of the Family Code. While section 6.602 deals with mediated settlement agreements, and section 6.604 deals with informal settlement agreements, the provisions in subsection (b) of the two sections—which set out when an agreement is binding on the parties—are

7

identical except for the references to "[a] mediated settlement agreement" in section 6.602(b) and to "[a] written settlement agreement reached at an informal settlement conference" in section 6.604(b). *See* Tex. Fam. Code §§ 6.602(b), .604(b). Presumably, the trial court included both sections in its findings and conclusions because the agreement originated in mediation and was finalized in informal conferences. In fact, the agreement itself recited that the parties "mediated this case" and then "continued as an informal settlement conference" and "as a result thereof have reached an agreement on all issues." On this record, we cannot conclude that there was no evidence to support these findings and conclusions.

Kramer next argues that because the agreement was an informal settlement agreement and agreed parenting plan, the trial court was required to make findings that the property division was just and right and that the parenting plan was in the best interest of the child prior to entering judgment on the informal settlement agreement. *See id.* §§ 6.604(d), 153.007(b). Kramer contends that there is no evidence to support these required findings. In the alternative, she urges a factual sufficiency challenge as to the property division finding. Kastleman responds that Kramer did not raise legal or factual sufficiency challenges to the evidentiary support for the trial court's final judgment in her original briefing in this Court and has not preserved this argument for consideration on remand. We conclude that, read liberally, Kramer's original brief contained arguments sufficient to preserve sufficiency arguments on remand. Nonetheless, we do not find them persuasive.

**Legal sufficiency**

In arguing that there was no evidence that the property division was just and right, Kramer relies, in part, on a footnote in the Texas Supreme Court's opinion in this case in which the

8

court noted that the settlement agreement did not assign values to the allocated property and no evidence of value was presented at the prove-up hearing. *See Kramer*, 508 S.W.3d at 214 n.6. However, the Texas Supreme Court was not addressing the issue of whether the property division was just and right; it merely observed that it could not discern if the division was intended to be equal, a question that is not relevant to whether the trial court abused its discretion in its determination of whether the division was just and right. *See Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981) (stating that court has wide discretion and that community property need not be equally divided); *In re A.E.R.*, 2016 Tex. App. LEXIS 8597, at *14–15 ("A court has wide discretion in dividing the property; the division need not be equal, but it must be equitable.").

On the issues of both whether the property division was just and right and whether the parenting plan was in the best interest of the child, the trial court had before it the parties' stipulations as testified to by Kastleman. Kramer argues that the settlement agreement was not offered into evidence at the prove-up hearing and that Kastleman's testimony was not competent evidence because his statements were "conclusory" opinions devoid of any factual support. *See, e.g.*, *Gardner v. Abbott*, 414 S.W.3d 369, 386 (Tex. App.—Austin 2013, no pet.) ("If a witness provides a conclusion but does not provide underlying facts to support the conclusion, then the witness's testimony is conclusory and legally insufficient to support a judgment.") (internal quotation and citation omitted). She further argues that the parties' stipulation as to the property division "cannot substitute for the trial court's independent finding" that the division was just and right and that the parties did not stipulate that the terms of the parenting plan were in the child's best interest. Because she contends that neither Kastleman's testimony nor the parties' stipulations were evidence, Kramer

9

challenges finding of facts numbers 20 and 29—that there was no disputed evidence presented at the prove-up hearing and that there was no disputed evidence regarding the property division—as inaccurate.[3] She contends that there is nothing in the record to indicate that the trial court independently determined that the property division was just and right and that the parenting plan was in the best interest of the child. She further contends that even if the trial court had attempted to determine whether the property division was just and right, the agreement did not support such a finding because there were no values assigned to the allocated property.

However, the parties stipulated that the property division was fair and just, and, contrary to Kramer's assertion, also stipulated that the parenting plan was in the best interest of the child.[4] In addition, the settlement agreement designated Kastleman as the party to present and "prove up" the agreement. Thus, Kramer stipulated to the required findings, agreed to Kastleman's testimony in support of the findings, and did not attend the hearing to dispute his testimony or present evidence to the contrary. In short, Kastleman's testimony was presented at a prove-up hearing for an agreed property settlement and parenting plan and was supported by the stipulations in the parties' signed informal settlement agreement as testified to by Kastleman and by Kramer's consent to Kastleman's presenting the agreement for approval by the trial court without opposition. The trial court's findings of fact and conclusions of law included express determinations that the settlement terms were fair, equitable, just and right and in the best interest of the child based on the

---

[3] Although Kramer cites finding of fact number 33, it appears that she is referring to finding of fact number 29.

[4] The settlement agreement adopted the terms of the agreement as to the parenting plan, which was attached as an exhibit, and contained the following statement: "The parties stipulate that such terms are in the best interest of the child."

10

evidence presented to the trial court by agreement, and nothing in the record suggests that the trial court did not review the terms of the agreement, which was introduced into evidence at the hearing on the motion to set aside the informal settlement agreement, prior to entry of the findings and conclusions. *See Comerio v. Comerio*, No. 04-13-00493-CV, 2014 Tex. App. LEXIS 5939, at * 4–5 (Tex. App.—San Antonio June 4, 2014, no pet.) (mem. op.) (concluding that section 6.604 does not require trial court to make express finding of just and right on record and that there was nothing in record to indicate trial court had not reviewed terms of settlement agreement or had not found them to be just and right). In this context, we cannot conclude that Kramer met her burden to prove that the evidence was legally insufficient to support the trial court's findings that the agreement was just and right and in the best interest of the child. *See City of Keller*, 168 S.W.3d at 827–28; *Lenz*, 79 S.W.3d at 18–19; *Pletcher*, 9 S.W.3d at 446; *King*, 661 S.W.2d at 255.

### Factual sufficiency

In her alternative argument that the evidence was factually insufficient to support the property division finding, Kramer argues that the "overwhelming weight of evidence demonstrates that the property division was not equitable" and challenges findings of fact numbers 5, 11, and 31 that the property division was just and right. Kramer argues that she revoked her consent and that the only competent evidence showed that the property division was "grossly disproportionate." However, the agreement stated in bold capital letters that it was binding and not subject to revocation, and it was signed by the parties and their attorneys. Consequently, as an informal settlement agreement under section 6.604(b), it was binding on the parties as to the property division. *See* Tex. Fam. Code § 6.604(b); *In re M.A.H.*, 365 S.W.3d 814, 819–20 (Tex. App.—Dallas 2012,

11

no pet.) (holding that agreement concerning dissolution of marriage that met requirements of section 6.604(b) was binding on parties, and rejecting appellant's argument that she had repudiated agreement before rendition of judgment); *see also* Tex. Civ. Prac. & Rem. Code 154.071(a) (providing that written settlement agreement is enforceable in same manner as any other contract).

As to the parenting plan, while it was not binding on the parties under section 153.007, it is binding on Kramer because the trial court approved it and granted the divorce before Kramer attempted to revoke her consent. While as a general rule, a party may revoke consent to a settlement agreement at any time before judgment is rendered on the agreement, once judgment is rendered, she may not attack that judgment. *See S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (per curiam); *Mailhot v. Mailhot*, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Skidmore v. Glenn*, 781 S.W.2d 672, 673 (Tex. App.—Dallas 1989, no writ). "Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S & A Rest.*, 892 S.W.2d at 857. "The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed." *Id.* at 858. Here, at the conclusion of the prove-up hearing on August 19, 2011, the trial court approved the settlement agreement and stated, "I grant the divorce." And in the corrected decree, the trial court stated that the divorce had been "judicially PRONOUNCED AND RENDERED in court at Austin, Texas, Travis County, Texas, on August 19, 2011, and further noted on the court's docket sheet on the same date . . . ." On this record, we conclude that the trial court clearly indicated its intent to render judgment on August 19, 2011, and Kramer's subsequent attempt to withdraw consent was ineffective. *See id.*; *Oliverez v. Oliverez*, No. 13-07-00348-CV,

12

2008 Tex. App. LEXIS 4501, at *6 (Tex. App.—Corpus Christi June 19, 2008, pet. denied) (mem. op.) (concluding that trial court expressed intent to render judgment when it stated, "Then the divorce is granted."); *In re Marriage of Joyner*, 196 S.W.3d 883, 885, 887, 892 (Tex. App.—Texarkana 2006, pet. denied) (holding that trial court rendered judgment by oral pronouncement that "your divorce is granted"); *see also Comerio*, 2014 Tex. App. LEXIS 5939, at *7–8 (holding that trial court intended to render judgment when it stated, "Granted and rendered"); *Skidmore*, 781 S.W.2d at 675 (reading pronouncement in context, and concluding that trial court rendered judgment when it stated, "I'll enter an order approving the agreement."). Thus, the settlement agreement was binding on the parties as to the property division under section 6.604 of the Family Code and as to both the property division and the parenting plan under the common law rule that a party cannot revoke consent to a settlement agreement after rendition of judgment. *See* Tex. Fam. Code § 6.604(b); *S & A Rest.*, 892 S.W.2d at 858; *Oliverez*, 2008 Tex. App. LEXIS 4501, at *6; *Joyner*, 196 S.W.3d at 885, 887, 892; *cf. In re M.A.H.*, 365 S.W.3d at 820 (holding that agreement concerning unmediated agreements on child support, conservatorship, and possession was not binding on appellant where she revoked consent before trial court rendered orders on agreement).

The fact that a party can appeal from a judgment to which she has consented if she alleges and proves fraud, collusion, or misrepresentation, *see Hicks v. Hicks*, 348 S.W.3d 281, 289 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.), does not save Kramer's argument that she withdrew consent. In her motion to set aside the informal settlement agreement, Kramer alleged fraud, specifically that certain assets were not disclosed or were misrepresented. However, the record supports the

conclusion that the disputed assets either were shown to have ceased to exist or have no value, were known to Kramer and listed on her inventory of property, had been addressed in prior hearings, had been produced in discovery, or were covered by the settlement agreement. At the conclusion of the hearing on Kramer's motion to set aside the informal settlement agreement, the trial court questioned Kramer about how she could claim that she was unaware of these assets in light of the facts, and Kramer responded that the production of documents had been so voluminous that she had not had time to review them all before the mediation and settlement discussions. This record does not support the conclusion that Kramer alleged and proved fraud so as to permit her to challenge the judgment to which she agreed. *See Hicks*, 348 S.W.3d at 289; *Boufaissal*, 251 S.W.3d at 161.

Further, the evidence does not support Kramer's argument that the property division was "grossly disproportionate." Kramer cites evidence that she entered the marriage with a significantly higher net worth than Kastleman, that she loaned separate property money to the community estate, that Kastleman managed the assets and grew their joint net worth fifteenfold, that Kramer did not work after the marriage, that the settlement agreement did not contain values, and that her inventory did not contain values for some of Kastleman's separate property. She also cites her testimony at the hearing on the motion to set aside the settlement agreement and in an affidavit that the division assigned Kastleman 70% of the community estate, while she received only 30%. However, the "testimony" to which she refers was actually comments she made at the hearing while not under oath after interrupting the proceeding, firing her attorney, and expressing her frustration until the trial court ultimately stopped her. And the affidavit to which she refers was attached to her motion to set aside the divorce decree and motion for new trial, filed after the hearing on her motion

14

to set aside the informal settlement agreement, and was not before the trial court in ruling on Kramer's motion to set aside the informal settlement agreement. *See* Tex. R. App. P. 33.1(a). In light of the parties' stipulation that the division was fair and just and Kastleman's testimony to that effect with Kramer's consent, we cannot conclude that Kramer has met her burden to show that the evidence is factually insufficient to support the trial court's findings that the property division was fair and just. *See Ortiz*, 917 S.W.2d at 772; *In re A.E.R.*, 2016 Tex. App. LEXIS 8597, at *3; *Pletcher*, 9 S.W.3d at 446; *King*, 661 S.W.2d at 255.

Finally, Kramer contends that the property division was not just and right because it was procured through economic duress. She argues that although the settlement agreement recites that it was signed by each party "freely and without duress after having consulted with the legal and tax professionals of his or her choice," the testimony in her affidavit—attached to her motion to set aside the divorce decree and motion for new trial—details the economic duress she faced when she signed the agreement. In her affidavit she asserted, among other things, that during the course of the divorce proceeding, Kastleman eliminated her access to community funds other than what he was ordered to pay her, cancelled her credit cards, and essentially "seize[d] complete control of the community assets"; obtained a reduction from $20,000 per month to $10,000 per month in the amount of attorney's fees he was to pay her and often delayed in making those payments; failed to timely produce documents, requiring her to file numerous motions to obtain them, and then produced voluminous documents that were not organized or Bates stamped; and sought to have her pay litigation costs incurred by various business entities, her own health insurance, and the mortgage and utilities for the family home. She also asserted her belief that Kastleman was hiding marital estate

15

assets in a "complex web of shell corporations" and had to spend her separate property money to "attempt[] to sort out the web of obfuscation created by [Kastleman]"; was running out of money and could not liquidate funds without incurring penalties or facing capital gains tax; had borrowed all the funds she could from family members; and by the time of mediation had "no alternative but to take whatever deal was on the table."

The record before us does not support the contention that Kramer was under economic duress prior to settlement. "In Texas, the term 'duress' rather than 'coercion' is generally used when parties are seeking to avoid a contract." *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (internal quotations omitted); *accord Wright v. Sydow*, 173 S.W.3d 534, 543–44 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("Generally, when one coerces another to execute a contract by taking undue or unjust advantage of the person's economic necessity or distress, the contract may be invalid or unenforceable. This legal theory is called economic duress.") (internal citation omitted). To meet her burden to show that the property division was not just and right because of economic duress, Kramer had to establish that she was experiencing economic necessity or distress. *See Lujan*, 433 S.W.3d at 706; *Pletcher*, 9 S.W.3d at 446; *King*, 661 S.W.2d at 255. On the record before us, Kramer has not met that burden.

The record shows that under the trial court's temporary orders, Kramer was receiving $1,200 per month in child support; $6,000 per month in spousal support, less the amount for the monthly mortgage payment, which Kastleman was to pay directly; and $10,000 in interim monthly attorney's fees, following three initial payments totaling $68,304. The temporary orders also reflect that Kastleman was to provide medical support for the child as additional child support, provide

16

coverage for the child under his health insurance, and pay Kramer's health insurance premiums and 50% of all her unreimbursed health care expenses. The record contains no evidence that Kramer filed any motions complaining that Kastleman had failed to pay any of these amounts and seeking to enforce the orders. Also under the temporary orders, during the pendency of the divorce proceeding, Kramer was given the exclusive use of the family home—on which Kastleman was to pay the second lien and cost of all repairs necessary if the home was to be sold—and two family cars, a 2000 Lexus and a 2005 Lexus. In addition, Kramer's second amended inventory, submitted approximately two weeks before mediation, listed as her separate property almost $900,000 in assets in bank and brokerage accounts, including an IRA. On this record, we cannot conclude that Kramer established that she was under economic duress when she signed the informal settlement agreement. Accordingly, we conclude that the trial court did not abuse its discretion in denying Kramer's motion to set aside the informal settlement agreement. *See Worford*, 801 S.W.2d at 109; *In re A.E.R.*, 2016 Tex. App. LEXIS 8597, at *2; *In re Marriage of C.A.S.*, 405 S.W.3d at 382; *In re A.B.P.*, 291 S.W.3d at 95. We overrule Kramer's first issue.

**Terms of the Divorce Decree and Kramer's Motion for New Trial**

We consider together Kramer's second and third issues, in which she argues that the trial court's judgment should be reversed because the Corrected Divorce Decree contained terms not agreed to by the parties (Issue 2) and that the trial court therefore erred in denying her motion for new trial on that basis (Issue 3). Kramer contends that even if this Court concludes that the informal settlement agreement was valid, the trial court improperly modified the agreement by adding terms not agreed to and by omitting agreed terms. When parties reach a settlement agreement, a final

17

judgment based on that agreement must be in "strict or literal compliance with that agreement." *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam) (citing *Vickery v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam)). The law does not require that the parties agree to all of the terms necessary to effectuate the purposes of the agreement; it is necessary only that the parties reach an agreement as to all material terms. *McLendon v. McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied). A judgment is not in "strict or literal compliance" with the terms of the agreement if it improperly removes or adds material terms. *See Chisholm*, 209 S.W.3d at 98 (citing *Vickery*, 532 S.W.2d at 292). However, a trial court may modify the terms of a settlement agreement as long as the modifications do not add terms the parties have not agreed to, significantly alter the original terms, or undermine the intent of the parties. *Wallace v. McFarland*, No. 01-10-00368-CV, 2013 Tex. App. LEXIS 10587, at *22 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.) (citing *Beyers v. Roberts*, 199 S.W.3d 354, 362–63 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)); *McLendon*, 847 S.W.2d at 606. As our sister court has stated:

> The proper inquiry . . . is not a mechanical examination of whether the divorce decree varies from the terms of the [settlement agreement]. Rather the inquiry is whether variances by the trial court significantly alter the parties' written agreement in a way that deviates from the parties' intent as manifested in that agreement. If the decree merely adopts mechanisms to enforce the parties' agreement while remaining consistent with their intent, it is enforceable.

*Davis v. Davis*, No. 01-12-00701-CV, 2014 Tex. App. LEXIS 2591, at *26 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.).

Kramer first argues that the trial court erred by not referring the parties' disputes concerning the child issues to mediation, as provided in the agreement. The agreement stated that if the parties could not resolve any dispute concerning "the interpretation or performance" of the agreement, they "shall return to mediation." However, the record does not reflect that Kramer sought referral to mediation from the trial court regarding any terms of the decree.[5] To raise an issue on appeal, a party must make a timely and specific objection to the trial court. *See* Tex. R. App. P. 33.1(a). Therefore, Kramer has not preserved this argument for review. *See id.* Even if Kramer had not waived this argument, as discussed below, all of the terms Kramer disputes either were consistent with the settlement agreement or were arrived at by agreement at the hearing on Kastleman's motion to enter the divorce decree.

The agreement provided that Kramer's attorney would draft the final divorce decree and that the parties agreed to "use the latest edition of the Family Law Practice [M]anual (FLPM)." Ultimately, Kastleman's attorney drafted the divorce decree, at times using terminology derived from

---

[5] At the hearing on Kramer's motion for new trial, her new attorney raised the issue of mediation for the first time, stating that certain issues related to the child should have been referred to mediation. Even then, however, she did not ask the trial court to refer the parties to mediation, instead saying,

> But that's not a major issue in the motion for new trial. The issue in the motion for new trial is the property division that you can't make heads or tails of. So I appreciate the court pointing that out. And I agree with the court. That is not something of any great moment, that did take a lot of time, that would have been better spent in a mediation without wasting the court's time. But it does not rise to the level of the property division.

When the trial court responded by saying, "or error on the part of the court," Kramer's attorney implicitly agreed by turning to another argument without further comment.

19

the FLPM. Kramer cites ten terms of the divorce decree that she argues were not part of the parties'

informal settlement agreement. She also complains that the decree omitted four terms that were

included in the settlement agreement. We address each complained-of term in turn.

### Added Terms

*Merger clause*

The divorce decree recites that it "is stipulated to represent a merger of an informal

settlement agreement between the parties." Kramer contends that she made no such stipulation, and,

in fact, she disputed that the divorce decree comported with the settlement agreement. However, the

complained-of term is boilerplate language derived from the FLPM, which the parties agreed to use

in drafting the decree. *See Fam. Law Prac. Man.* 23-1-9 § 6.c. Kramer contends that form language

from the FLPM can be used only if it is consistent with the parties' agreement. We cannot agree that

this language itself, which was included in compliance with the agreed procedure for drafting the

decree, contradicts the parties' agreement. *See Haynes v. Haynes*, 180 S.W.3d 927, 929, 931 (Tex.

App.—Dallas 2006, no pet.) (holding that where parties agreed that terms of settlement agreement

would be incorporated into final decree and follow forms in FLPM, added provisions regarding

income tax returns for year of divorce and indemnity for undisclosed debts and obligations based on

FLPM were consistent with agreement).

Morever, even if we were to conclude that the trial court erred in including this

boilerplate language, Kramer has not shown that the inclusion of this particular provision has harmed

her where she has had the opportunity to challenge the settlement agreement and where there is

nothing in the record to indicate that the trial court relied on this provision in declining to set aside

the settlement agreement. Under the harmless error rule, before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." Tex. R. App. P. 44.1(a); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). "The rule applies to all errors." *Magee*, 347 S.W.3d at 297. Kramer has not met her burden to show harm from the inclusion of this provision. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) (stating rule that complaining party must show harmful error to obtain reversal). Accordingly, we conclude that this provision did not significantly alter the material terms of the settlement agreement so as to render the decree reversible. *See Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22; *Haynes*, 180 S.W.3d at 931.

### *Summer possession*

Kramer argues that the divorce decree modified the parties' agreement regarding summer possession of the parties' child. The agreement provided that the parties would split summer possession in half, that Kastleman would have possession the "first half of summer, for example 2012 is June 1-July 8," while Kramer would have possession "July 9-August to Friday before school starts," and that the parties would "alternate the summer halves." In finding of fact number 27, the trial court found that "on October 11, 2012, Lisa Kramer requested the Court to use July 16th each year as the mid-point of the Summer possession period of possession with the child and Bryan Kastleman agreed." Kramer contends that the record does not support this finding. At

21

the hearing on Kastleman's motion to enter the divorce decree, his attorney informed the court that the agreement provided for the parties to split the summer in half for possession purposes but did not define the halfway point. He stated that he and Kastleman had made an effort for the child to be with his mother every year on her birthday and suggested July 14 as the midpoint. Kramer interjected that July 14 is her birthday and using that day would require her to travel on her birthday. Kastleman's counsel then suggested July 13. Kramer responded, "[W]hy can't we split it like the settlement agreement says? It says 'half the summer.' And what I suggest is, why don't we do half the summer; and then if we can't agree what the middle point is, use July 16th as the middle point." After further discussion, during which the parties could not agree to a date, Kramer concluded by stating, "Why can't we just take the whole summer and split it in half? And if we don't agree on the date, then let's make it the 16th because that seems like the right date. That's what I suggested." Kastleman's attorney replied, "That's fine with us." Neither Kramer nor her attorney made any further objection. On this record, we conclude that the divorce decree did not add material terms to the settlement agreement or conflict with the parties' intent but instead added clarifying terms necessary to effectuate the purpose of the settlement agreement based on agreement in open court. *See Davis*, 2014 Tex. App. LEXIS 2591, at *26; *In re Marriage of Western*, No. 10-12-00072-CV, 2012 Tex. App. LEXIS 6432, at *12–16 (Tex. App.—Waco Aug. 2, 2012, no pet.) (mem. op.) (holding that minor clarifications that did not add material terms or exceed scope of or contradict parties' agreement did not provide basis for reversal); *McLendon*, 847 S.W.2d at 606.

22

*Bar Mitzvah*

The settlement agreement provided that "[e]ach parent will contribute half of [the child's] Bar Mitzvah costs up to $25,000." At the hearing on Kastleman's motion to enter the decree, the parties disagreed as to whether the reference to $25,000 was to the amount of the contribution half, as Kramer contended, or to the total Bar Mitzvah cost, as Kastleman contended. The trial court stated that it read the agreement to say the latter. Kramer responded by saying, "Let's just delete it," after which she engaged in a discussion with the trial court that resulted in the trial court's admonishing her that she was in danger of being held in contempt. The decree was revised to read: "Each parent shall pay up to $12,500 for the costs of the bar mitzvah." Kramer's attorney then reiterated Kramer's request that the Bar Mitzvah paragraph be struck, which the trial court denied. On this record, we conclude that the divorce decree did not add material terms to the settlement agreement or conflict with the parties' intent but instead clarified terms as necessary to effectuate the purpose of the settlement agreement. *See Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Western*, 2012 Tex. App. LEXIS 6432, at *12; *McLendon*, 847 S.W.2d at 606.[6]

---

[6] Kramer also argues that this provision is ambiguous and the trial court should have referred the parties to mediation to resolve it. However, as noted above, Kramer has failed to preserve her argument that the trial court erred in not referring the parties to mediation. *See* Tex. R. App. P. 33.1(a). Further, the trial court concluded that the provision was not ambiguous and read it to say that "the Bar Mitzvah is not to exceed $25,000," and we agree. The phrase "up to $25,000" follows "Bar Mitzvah costs" without punctuation. Under the last-antecedent canon of statutory construction, a qualifying phrase modifies only the words and phrases immediately preceding it. *Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016) (citing *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000)). Thus, under the last-antecedent canon, the phrase "up to $25,000" applies only to "Bar Mitzvah costs."

*Jewish holidays*

The settlement allocated possession on certain Jewish Holidays for even and odd years without specifying days or dates. The divorce decree provides for possession only on the holidays themselves, beginning at 4:00 p.m. on the days the holidays begin and ending at 9:00 p.m. on the days following the holidays, except for Passover, for which the decree provides for possession from 4:00 p.m. on the day Passover begins until 4:00 p.m. the next day. Kramer complains that the possession ordered by the trial court follows the schedule observed by Reform Jews for Rosh Hashanah rather than the two-day holiday she observes as a Conservative Jew. She further complains that the decree fails to include a provision for travel time on either side of the holiday itself, which is important to Kramer because she has no family in Texas. Thus, Kramer argues that finding of fact number 26, which states that the decree included no deviation from the settlement agreement regarding these holidays, is incorrect. Kramer also argues that the trial court should have referred the parties to mediation to resolve this dispute.

As discussed above, Kramer has failed to preserve her argument that the trial court erred in not referring the parties to mediation. *See* Tex. R. App. P. 33.1(a). Further, the informal settlement agreement did not contain any provision for possession on days beyond the holidays themselves. Accordingly, we conclude that the trial court did not err in refusing to add such a provision. *See Chisholm*, 209 S.W.3d at 98; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22. As for the beginning and ending possession times, the parties did not agree to specific times. Accordingly, the trial court defined the Jewish holidays as generally running from 4:00 p.m. until 9:00 p.m., honoring the Reform Jewish tradition of holidays running from sundown to sundown and clarifying

24

the agreement to effectuate its purpose. *See Davis*, 2014 Tex. App. LEXIS 2591, at \*26; *Western*, 2012 Tex. App. LEXIS 6432, at \*12; *McLendon*, 847 S.W.2d at 606. Kramer does not cite to any evidence in the record that she asked the trial court to modify the decree so as to follow the holiday schedule for Conservative Jews, as opposed to that of Reform Jews, and we have found none in the multiple motions she filed in an effort to set aside or modify the settlement agreement and divorce decree or in the reporter's record of the numerous hearings. *See* Tex. R. App. P. 33.1(a). On this record, we cannot conclude that the trial court improperly altered the original terms of the agreement or undermined the intent of the parties. *See Davis*, 2014 Tex. App. LEXIS 2591, at \*26; *Wallace*, 2013 Tex. App. LEXIS 10587, at \*22; *Western*, 2012 Tex. App. LEXIS 6432, at \*12.

*Life insurance policies*

The decree provides that each parent shall maintain, as additional child support, a life insurance policy for not less than $300,000 naming the other parent a primary beneficiary for the benefit of the child. The decree also includes terms that specify how the proceeds are to be utilized. Kramer argues that the settlement agreement provided only that each party was to maintain his or her life insurance policy in the amount of $300,000 and that she objected to the additional language. However, the language to which Kramer objects is boilerplate language from the FLPM and thus comports with the parties' agreement to use terminology from the FLPM. *See Tex. Fam. Law Man.* 23-1-70 § 10.G.15; *Haynes*, 180 S.W.3d at 931. Thus, the trial court did not add language that exceeded the scope of the parties' agreement or deviated from the parties' intent as manifested in that agreement but added clarifying terms to effectuate its purposes. *See Davis*,

2014 Tex. App. LEXIS 2591, at *26; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22; *Western*, 2012 Tex. App. LEXIS 6432, at *12–16.

*Lassen condominiums*

The settlement agreement provides that Kastleman was to be awarded four "Lassen Condos." The Partition Agreement Incident to Divorce (Partition Agreement), which contains the terms of the property division awarded in the Decree, awards Kastleman "100% of the shares of stock in the entity known as Lassen Corp. and any condominiums however they may be titled." Kramer argues that the property awarded in the Partition Agreement exceeds that specified in the settlement agreement. However, the record does not reflect that Kramer raised this issue in the trial court, and she has therefore failed to preserve it for appellate review. *See* Tex. R. App. P. 33.1(a). Further there does not appear to be any discrepancy between the two agreements. Exhibit 1 to the settlement agreement states that Kastleman was to receive the "Lassen Condos" and the "Lassen Corp. Stock." Thus, the Partition Agreement does not appear to conflict with or exceed the scope of the settlement agreement, and Kramer does not offer any explanation or further argument as to how the terms of the two agreements conflict. *See* Tex. R. App. P. 38.1(i) (stating brief must contain clear and concise argument for contentions made); *Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Western*, 2012 Tex. App. LEXIS 6432, at *15–16.

*Attorney's fees for enforcement actions*

Kramer next complains that the Partition Agreement includes a provision that "[r]easonable attorney's fees and expenses of a party incurred in successfully prosecuting or

26

defending a suit under this Agreement against the other party or the other party's estate will be recoverable by the successful party in the action." Kramer contends that the settlement agreement contained no such language. However, this language is boilerplate language from the FLPM and thus comports with the parties' agreement to use terminology from the FLPM. *See Tex. Fam. Law Man.* 23-6-50 § 7.15; *Haynes*, 180 S.W.3d at 931. The trial court did not add language that exceeded the scope of the parties' agreement or deviated from the parties' intent as manifested in that agreement. *See Davis*, 2014 Tex. App. LEXIS 2591, at \*26; *Western*, 2012 Tex. App. LEXIS 6432, at \*15–16. Kramer also argues that this provision was improper because the settlement agreement provided that the parties would mediate disputes about interpretation and performance of the agreement. However, this provision does not preclude mediation of disputes and would apply only if mediation were unsuccessful. Moreover, this provision simply restates the law that a prevailing party in a suit to enforce a contract under chapter 38 of the Texas Civil Practice and Remedies Code may recover costs and attorney's fees. *See generally* Tex. Civ. Prac. & Rem. Code §§ 38.001–.006.

*Superceding clause/merger clause in Partition Agreement*

The Partition Agreement provides that it and the divorce decree supercede all other agreements and that it is "stipulated to represent a merger of an informal settlement agreement between the parties." Kramer contends that she made no such stipulation and that she does not agree that the Partition agreement supercedes all other agreements. However, these terms are boilerplate language derived from the FLPM, which the parties agreed to use in drafting the decree. *See Fam. Law Prac. Man.* 23-1-9 §§ 6.c., 7.20. Moreover, it appears from the record that the Partition Agreement was, in substance, a restatement of the property division agreed to in the settlement

27

agreement, and Kramer does not argue that any of the property allocation in the Partition Agreement varies from that in the settlement agreement, with the exception of the Lassen condominiums, which we have already addressed. Thus, this language in the Partition Agreement comports with the agreed procedure for drafting the decree and does not contradict or exceed the material terms of the parties' agreement. *See Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22; *Western*, 2012 Tex. App. LEXIS 6432, at *15–16; *Haynes*, 180 S.W.3d at931.

### *Attorney's fees for bill of review*

The Partition Agreement provides that a party who unsuccessfully seeks a bill of review to modify or set aside the Partition Agreement is liable to the defending party for attorney's fees, costs, and expenses. Kramer complains that the settlement agreement had no such provision. However, Kramer did not complain about this term in the trial court and thus did not preserve this argument for appellate review. *See* Tex. R. Civ. P. 33.1(a). Even if Kramer had not waived this argument, this boilerplate language derives from the FLPM and thus does not vary from the parties' intent or alter the material terms of the settlement agreement. *See Tex. Fam. Law Man.* 23-6-50 §7.16; *Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22; *Western*, 2012 Tex. App. LEXIS 6432, at *15–16; *Haynes*, 180 S.W.3d at 931.

### *Stipulation as to just and right property division*

Finally, Kramer challenges the provision in the Partition Agreement that states that each party "stipulates this Agreement to be a just and right division of marital debts and assets" and that each party signed the agreement "without any coercion, any duress, or any agreement other than

those specifically set forth in this Agreement." Kramer argues that she "makes" no such stipulations. However, the parties stipulated in the settlement agreement that the property division was fair and just and that they had entered the agreement "freely and without duress," and Kramer did not attempt to revoke that stipulation until after the trial court had rendered judgment. The Partition Agreement does not vary from the material terms of the settlement agreement. *See Chisholm*, 209 S.W.3d at 98; *S & A Rest.*, 892 S.W.2d at 857.

### Omitted terms

*"Meaningful consultation"*

In her first complaint concerning terms the trial court omitted from the decree, Kramer complains that although the term "meaningful consultation between the parties" was used in the settlement agreement with regard to decisions regarding invasive medical procedures for the child, the trial court erred by failing to describe what constitutes "meaningful consultation." By this argument, Kramer seeks to have the trial court include a definition in the decree that was not included in the settlement agreement. Thus, the trial court did not "omit" a term from the settlement agreement at all, much less a material term. *See Chisholm*, 209 S.W.3d at 98 (stating that judgment is not in "strict or literal compliance" with terms of settlement agreement if it improperly removes material terms).

*Uninsured medial expenses*

The settlement agreement provided that Kastleman would provide health insurance for the child and that the parties would split equally any uninsured medical expenses. It further

29

provided that each parent would pay directly to the healthcare provider any scheduled uninsured medical expense of the child exceeding $500. Kramer complains that this last provision was omitted from the divorce decree. However, Kramer failed to raise this issue with the trial court and has not preserved it for appellate review. *See* Tex. R. App. P. 33.1(a). Even if Kramer had not waived this argument, we would conclude that the decree substantially comports with the settlement agreement by providing that the non-incurring party was to pay his or her percentage of the uninsured portion of the expense by paying the healthcare provider directly or by reimbursing the incurring party. We would therefore conclude that the decree does not omit a material term of the settlement agreement. *See Chisholm*, 209 S.W.3d at 98.

### *Individual receivables*

The settlement agreement provided that Kramer was to be awarded Kastleman's "individual receivables including loans from Metropolitan-LKBK, Ltd., and Odessa Southwest Parkway, Ltd." Kramer complains that this asset was not included in the property awarded to her in the Partition Agreement. However, Kramer failed to raise this issue with the trial court and has not preserved it for appellate review. *See* Tex. R. App. P. 33.1(a). Further, while the record is less than clear, it appears that these properties were allocated to Kramer, extinguishing Kastleman's right to any receivables.

### *GSA Agreement*

The settlement agreement included as Exhibit 4 a "GSA Agreement," which set out how the proceeds from a then-pending lawsuit brought by the General Services Administration

against Kastleman and one of the parties' limited partnerships were to be distributed. The GSA Agreement stated that the Partition Agreement was to include provisions relating to the resolution of those claims. Kramer argues that although the Partition Agreement refers to Exhibit 4 and incorporates it by reference, it also states that the agreement was attached when it was not. The record reflects that Kramer failed to raise this issue with the trial court and has not preserved it for appellate review. *See id.* R. 33.1(a). Even if she had not waived this argument, we would conclude that by referring to and incorporating by reference the terms of the GSA Agreement, the Partition Agreement substantially complied with the terms of the settlement agreement and did not alter the material terms of the parties' agreement. *Davis*, 2014 Tex. App. LEXIS 2591, at *26; *Wallace*, 2013 Tex. App. LEXIS 10587, at *22; *Western*, 2012 Tex. App. LEXIS 6432, at *15–16.

### Conclusion as to Issues 2 and 3

We conclude that the Corrected Divorce Decree did not contain terms that were not agreed to by the parties or omit agreed terms and that the trial court did not err in denying Kramer's motion for new trial on that basis. We overrule Kramer's second and third issues.

### Attorney's Fees as Sanctions

In her fourth issue, Kramer argues that the trial court erred in awarding attorney's fees to Kastleman as sanctions against Kramer for filing her motion to set aside the settlement agreement.[7] Kramer filed her motion to set aside the settlement agreement eleven months after the

---

[7] As part of this issue, Kramer responds to Kastleman's argument in his original briefing that Kramer has waived her right to challenge the sanctions order because her notice of appeal did not separately identify it. However, Kastleman does not re-urge that argument in his briefing on remand

31

trial court granted the divorce, alleging fraud and nondisclosure of certain assets. Kastleman sought sanctions under Rule 13 and chapter 10 of the Civil Practices and Remedies Code, arguing that there was no basis for Kramer's claim that the settlement was not just and right and that the motion raised no new facts or legal arguments. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code §§ 10.001–.006. In its order and in findings of fact numbers 56 and 58, the trial court found that Kramer's motion to set aside the settlement agreement was groundless and had been brought in bad faith and for the purpose of harassment in violation of Rule 13 and section 10.001. Accordingly, the trial court awarded sanctions against Kramer in the amount of $32,215.85 to be paid to Kastleman's counsel in two payments. The trial court also awarded Kastleman $50,000 in the event of Kramer's unsuccessful appeal to this Court and $15,000 in the event of her unsuccessful petition for review to the Texas Supreme Court. Kramer argues that there is no evidence to support the trial court's finding number 56—that Kramer's amended motion to set aside the settlement agreement violated Rule 13 and section 10.001—or finding of fact number 65—that the motion for sanctions should be granted.

Rule 13 provides that a court may impose sanctions upon a determination that a pleading or motion is groundless and brought in bad faith or groundless and brought for the purpose of harassment. Tex. R. Civ. P. 13. If a pleading is signed in violation of Rule 13, the court shall impose an appropriate sanction available under Rule 215.2(b)—which includes an award of attorney's fees—on the person who signed it, a represented party, or both. *Id.* R. 13, 215.2(b)(8).

---

and has apparently abandoned it. Further, a notice of appeal need not list every ruling an appellant intends to challenge. *See Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 386 (Tex. App.—Dallas 2012, no pet.).

"Courts may, under rule 13, 'impose sanctions against parties filing frivolous claims to deter similar conduct in the future and to compensate the aggrieved party by reimbursing the costs incurred in responding to baseless pleadings.'" *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244, 254 (Tex. App.—Austin 2007, no pet.) (quoting *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596–97 (Tex. 1996) (per curiam)). Under Rule 13, "groundless" means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. Tex. R. Civ. P. 13. "Bad faith" means conscious wrongdoing for a dishonest, discriminatory, or malicious purpose. *Save Our Springs All. Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied); *Appleton v. Appleton*, 76 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Chapter 10 allows sanctions for filing a pleading or motion that is lacking a reasonable basis in fact or law and is brought "for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation." Tex. Civ. Prac. & Rem. Code §§ 10.001(1), .004. "Improper purpose" is the equivalent of "bad faith" under Rule 13. *Save Our Springs All.*, 198 S.W.3d at 321. Under section 10.001, the signer of a pleading or motion certifies that each claim, defense, denial, or other factual or legal contention has a reasonable basis in fact and law, based on the signatory's best knowledge, information, and belief, formed after reasonable inquiry. *See* Tex. Civ. Prac. & Rem. Code § 10.001; *Save Our Springs All.*, 198 S.W.3d at 320. Sanctions may be awarded against a party, the party's attorney, or both, Tex. Civ. Prac. & Rem. Code § 10.004, except that a court may not award monetary sanctions against a represented party under section 10.001(2) for asserting unfounded legal contentions, *id.* § 10.004(d). Sanctions

33

pursuant to chapter 10 can be in the form of "an order to pay the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." *Id.* § 10.004(c)(3).

If the trial court's imposition of sanctions is supported on one of these legal bases, we will uphold the order. *See Zeifman v. Nowlin*, 322 S.W.3d 804, 809 (Tex. App.—Austin 2010, no pet.). We review a trial court's imposition of sanctions for an abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). We will reverse the trial court's ruling only if it is arbitrary, unreasonable, or without reference to any guiding rules or principles. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund*, 299 S.W.3d at 97 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding)). Whether a suit is groundless or brought in bad faith is a question of law for the trial court. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989). The relevant time period for determining bad faith or improper purpose is when the pleading was filed. *See Allison v. Conglomerate Gas II L.P.*, No. 02-13-00205-CV, 2015 Tex. App. LEXIS 9230, at *18 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.).

In its order and findings of fact numbers 57 and 58, the trial court found that Kramer's motion to set aside the informal settlement agreement was groundless and brought in bad faith and for the purpose of harassment because it (1) sought relief contrary to prior rulings of the trial court, (2) sought relief contrary to Kramer's agreements and stipulations in the parties' agreement, (3) raised no new issue of fact or law, and (4) needlessly increased the costs of litigation. Kramer

34

contends that there is no evidence to support these findings. Kramer first argues that there is no evidence that her motion was groundless and brought in bad faith or for purposes of harassment. Specifically, she contends that the trial court was required to hold an evidentiary hearing and did not. She argues that there were no witnesses and no evidence presented at the hearing on the motion for sanctions and that the trial court did not indicate it was considering the evidence presented in the hearing on her motion to set aside the settlement agreement, heard the same day.

We agree that an evidentiary hearing prior to the trial court's imposition of sanctions was necessary under both Rule 13 and chapter 10. *See 21st Mortg. Corp. v. Hines*, No. 09–15–00354–CV, 2016 Tex. App. LEXIS 13003, at *9, *15 (Tex. App.—Beaumont Dec. 8, 2016, pet. denied) (mem. op.) (holding that both Rule 13 and chapter 10 require trial court to hold evidentiary hearing to make determination about motives and credibility of represented party or attorney); *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (same as to Rule 13). In deciding whether a party has filed a pleading in bad faith or for the purpose of harassment, the trial court must assess the party's conduct and examine the facts available to her at the time the relevant pleading was signed. *Gomer*, 419 S.W.3d at 478. In some circumstances, the trial court may be able to make such a determination by taking judicial notice of the case file. *Id.*

However, we disagree that there was no evidentiary hearing on the motion for sanctions. The record reflects that at the hearing on Kramer's motion to set aside the settlement agreement and Kastleman's motion for sanctions, there was a preliminary discussion about the allocation of time for each motion. The trial court stated that the evidence on Kramer's motion to set aside the settlement agreement and the evidence on Kastleman's motion for sanctions was "going

35

to be . . . intertwined" and proceeded to hear evidence as it related to both motions, prior to hearing testimony concerning attorney's fees incurred by Kastleman. Kramer and Kastleman testified regarding factual issues, and the parties offered into evidence the informal settlement agreement, Kramer's second amended inventory, and other documents related to the parties' assets. And at the subsequent hearing on Kramer's rule 329b motion to set aside the sanctions order, when Kramer's new attorney argued that there had been no evidentiary hearing, the trial court reiterated that at the prior hearing it had taken testimony as to both motions at the same time "for efficiency." On this record, we conclude that the trial court held the required evidentiary record. *See Hines*, 2016 Tex. App. LEXIS 13003, at *9, *15; *Gomer*, 419 S.W.3d at 478.

Kramer also argues that seeking relief contrary to the trial court's prior rulings is not a ground for sanctions; that she sought the court's approval of her revocation of her prior stipulations and agreements; that there was no evidence as to Kramer's motives, what facts were known to her, or what investigation was conducted prior to her filing the motion; and that her motion raised new issues in that it was based on allegations of fraud and nondisclosure, issues that she had not raised prior to the motion. We agree that seeking relief contrary to a court's prior rulings is not a ground for sanctions, and, in fact, is the essence of such motions as a motion to set aside, a motion for new trial, or a motion for rehearing. However, as discussed above, Kramer attempted to revoke her consent to the parties' stipulations and agreements only after the trial court had rendered judgment based on the settlement agreement. Further, Kramer was present at the hearing at which it was shown that the allegedly undisclosed assets either had ceased to exist or had no value, were known to Kramer and listed on her inventory of property, had been addressed in prior hearings, had been

36

produced in discovery, or were covered by the settlement agreement. Nonetheless, Kramer filed a motion and an amended motion to set aside the settlement agreement based on her contention that Kastleman had failed to disclose those very assets. When questioned by the trial court directly as to how she could claim that she was unaware of such assets, Kramer's only explanation was that she had not had time to review all of the documents Kastleman had produced before the mediation and settlement discussions. On this record, we cannot agree that there was no evidence to support the trial court's findings that Kramer's motion to set aside the settlement agreement was brought in bad faith and for purposes of harassment and needlessly increased the costs of litigation. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code § 10.001; *see Allison*, 2015 Tex. App. LEXIS 9230, at *23 (holding that filing claim after end of discovery period in attempt to delay until settlement could be reached was evidence that claim was brought in bad faith or for purpose of harassment or delay).

Kramer next argues that the award of sanctions was improper because she was entitled to rely on her counsel's representation that she had a valid claim. She challenges findings of fact numbers 49 through 53, which state that the allegations in her motion to set aside the settlement agreement were "frivolous, needless, and a waste of resources," and findings of fact numbers 38 through 47, which state that certain of her allegations were "demonstrably false." Kramer argues that she did not sign the pleading and that even if sanctions were warranted, they should have been imposed on her attorney, who signed the pleading, and not on her. However, under Rule 13, sanctions may be imposed on a represented party. *See* Tex. R. Civ. P. 13. And chapter 10 precludes sanctions against a represented party only for violations of section 10.001(2), which the trial court did not cite in its findings. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001(2) (providing that

37

signatory to pleading certifies that each claim, defense, or other legal contention is warranted by existing law or by nonfrivolous argument for extension, modification, or reversal of existing law or establishment of new law), .004(d). "[T]he sanction must be visited upon the true offender," and the trial court must determine "whether the offensive conduct is attributable to counsel only, to the party, or to both." *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 363 (Tex. 2014) (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), for first prong of two-part test to determine whether sanctions comply with due process). Thus, the trial court did not abuse its discretion in sanctioning Kramer if the record supports its determination that Kramer was the "true offender."

In her motion to set aside the settlement agreement, Kramer alleged numerous undisclosed assets, including two assets that were listed on her own sworn inventory and others that had been addressed in prior hearings, had been produced in discovery, or were covered by the settlement agreement. When the motion was filed, the proceeding had been pending for more than three years, and it appears from the appellate record that Kramer's attorney who filed the motion made his first appearance in doing so. During the hearing on motion to set aside the settlement agreement and motion for sanctions, after the court denied Kramer's motion to set aside the settlement agreement and turned to the evidence on attorney's fees, Kramer fired her attorney and proceeded to argue the merits of the motions before "rehiring" him. Further, at the time of the sanctions order, the trial court was aware that Kramer had been represented by numerous attorneys;[8] had personally attended most if not all of the many hearings, often interrupting the proceedings, at

---

[8] According to Kastleman, Kramer was represented by at least ten attorneys during the course of the divorce proceeding.

38

which some of the allegedly undisclosed documents had been addressed, with emotional outbursts; had admitted to having received documents prior to agreeing to settle and then alleged in her motion to set aside the settlement agreement that the documents had not been disclosed; and had consulted a number of experts to assist her in reviewing discovery documents prior to settlement. On this record, we cannot conclude that the trial court abused its discretion in sanctioning Kramer rather than her attorney. *See Nath*, 446 S.W.3d at 365–66 (upholding sanction against party who was directly involved in suit by providing information for petitions and attending depositions); *Unifund*, 299 S.W.3d at 97; *Callaway v. Martin*, No. 02-16-00181-CV, 2017 Tex. App. LEXIS 4800, at *9 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.) (noting that trial court may consider cases's entire history in determining sanctions); *Pajooh v. Abedi*, No. 14-16-00336-CV, 2017 Tex. App. LEXIS 3348, at *12–14 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.), *consolidated with In re Pajooh*, No. 14-16-00351-CV (orig. proceeding) (upholding sanctions against party who knew he had no damages when he filed suit and had history of filing and dismissing or abandoning suits).

We turn next to Kramer's alternative argument that even if the evidence was sufficient to support the sanctions award, it was excessive. The Texas Supreme Court has held that sanctions must not be excessive. *See Nath*, 446 S.W.3d at 363 (citing *TransAmerican*, 811 S.W.2d at 917, for second prong of two-part test to determine whether sanctions comply with due process). As explained above, in addition to suing Kastleman, Kramer also sued Kastleman's father and four of Kastleman's separate property companies, alleging actual and constructive fraud, breach of fiduciary duty, forgery, conversion, and conspiracy. She subsequently dismissed her claims against

Kastleman's father and two of the companies. The remaining two companies were parties to the settlement agreement and were represented by David Minton at the hearing on Kramer's motion to set aside the settlement agreement and Kastleman's motion for sanctions. Robert Miller, who had previously worked for Minton's firm, also appeared and made the closing argument for Kastleman and the companies on the motion to set aside the settlement agreement. When the trial court turned to the evidence on attorney's fees in support of the motion for sanctions, Kastleman's attorney, Robert Ettinger, testified in response to questioning by Minton that he, Minton, and Miller had all participated in the motions, that his fees through the hearing were $7,092.38, that Minton's fees were $10,263.50, and that Miller's fees were $14,060.00, for a total of $32,215.88. Ettinger testified as to his experience and hourly rate; to Miller's competence; that Minton's hourly rate, as represented by Minton, was reasonable; and that the hours extended and the fees incurred were reasonable and necessary. Kramer did not object to Ettinger's testimony concerning the fees of Minton or Miller or offer any controverting evidence, and the only cross-examination concerned allocation of fees among various tasks, in response to which Ettinger clarified that only the fees for the motion to set aside the settlement agreement and the motion for sanctions were included in his testimony. Miller testified as to his experience and familiarity with family law matters, and the only cross-examination was as to his hourly rate, which he stated was $200. The trial court granted the motion and awarded $32,215.88 in sanctions against Kramer to be paid to Kastleman's counsel.

Kramer challenges finding of fact number 66 regarding the total amount of attorney's fees and the reasonableness and necessity of those fees. She contends that the sanctions award was excessive because it included amounts to be paid to attorneys who did not represent Kastleman and

because the two companies had no pleadings on file requesting sanctions. She argues that Minton represented only the companies and that it was unclear whom Miller represented, citing Minton's explanation to the trial court that Miller was with Minton's firm "at the time and is also here sort of for both parties." Kramer also complains that Minton and Miller did not testify as to their own attorney's fees and that there was no evidence as to the work that either of them did.

On this record, we do not find these arguments persuasive. Kramer sued the two companies, settled with them, and then sought to set aside the settlement agreement. The companies were Kastleman's separate property, and Kramer alleged that there was "unity between" Kastleman and the companies "such that the two are not separate" and that Kastleman and the companies conspired to "deprive the [parties'] community of assets." The motion for sanctions stated that it had been necessary for Kastleman to hire Ettinger and Minton, and it was signed by Ettinger as counsel for Kastleman and by Minton as counsel for the companies. Minton explained that Miller had formerly worked for his firm, and Miller presented argument on the motion to set aside the settlement agreement for both Ettinger and the companies and testified as to appellate attorney's fees. Kramer did not object to Miller as a witness or to the substance of his testimony and cross-examined him only to clarify his hourly rate. Ettinger testified that his fees and those of Minton and Miller were reasonable and necessary for the work performed in response to the motion to set aside the settlement agreement and motion for sanctions. Kramer did not challenge his testimony or offer contrary evidence. On this record, we cannot conclude that the award of attorney's fees to Kastleman was excessive. *See Nath*, 446 S.W.3d at 363; *Unifund*, 299 S.W.3d at 97; *TransAmerican*, 811 S.W.2d at 917.

Finally, Kramer argues that there is no evidence to support the award of attorney's fees on appeal. She complains that Miller did not testify as to whether his experience included representing parties on appeal, whether the figures he cited were for representing the appellant or the appellee, or whether the figures were for his work or that of an attorney who charged more or less than Miller. Kramer also contends that Miller offered no support for his testimony other than to state that the case was "contentious and voluminous" and offered no support whatsoever for why he changed his estimate from $25,000, as stated in the motion for sanctions, to $50,000. For these reasons, Kramer argues that there is no evidence to support the trial court's findings of fact numbers 68 and 69 concerning attorney's fees on appeal.

Miller testified that he has been licensed to practice law since 1998, has worked on numerous family law cases, is familiar with "contentious and voluminous family law matters" and considered this case to be such a matter, and had reviewed the discovery in this case ("at least, part of" it). He stated his opinion that reasonable and necessary fees for appeal to this Court would be $50,000 and for petition for review to the Texas Supreme court would be $15,000.[9] Kramer did not object to his testimony, challenge its substance, or offer any controverting evidence. The only cross-examination was to confirm Miller's hourly rate of $200. On this record, we conclude that there is some evidence to support the award of attorney's fees on appeal and that the trial court did not abuse its discretion. *See Garcia v. Gomez*, 319 S.W.3d 638, 641–42 (Tex. 2010) (concluding

[9] In questioning Miller, Minton asked about attorney's fees "for a writ," apparently using terminology for a writ of error, a procedure for appeal to the Texas Supreme Court that has been replaced by "petition for review." However both the trial court's sanctions order and findings of fact refer to an award of $15,000 for Kramer's unsuccessful petition of review to the Texas Supreme Court, and the parties do not contend otherwise.

that, although attorney's testimony lacked specifics, there was some evidence fees were reasonable where attorney testified as to his experience in subject matter at issue, his fees in event of appeal, and reasonableness of such fees, and opposing party did not cross-examine attorney, present additional evidence on issue, or question reasonableness of fees); *Unifund*, 299 S.W.3d at 97; *see also Kinsel v. Lindsey*, ___ S.W.3d ___, No. 15-0403, 2017 Tex. LEXIS 477, at *36 (Tex. May 26, 2017) (upholding court of appeals' determination that attorney's testimony on fees, though "lacking in specifics," "was 'at the very least the quantum of evidence found sufficient' by this Court in *Garcia*") (quoting court of appeals).  We overrule Kramer's fourth issue.

## CONCLUSION

Having overruled Kramer's issues, we affirm the trial court's corrected final decree of divorce.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed on Remand

Filed:  November 3, 2017